HAMEL *v.* SOUTHERN RY. CO. IN MISSISSIPPI.

[74 South. 276, Division A.]

1. WITNESSES. *Privileged communications to physician. Cause of death.*

Under Code 1906, section 3695, providing that communications by a patient to his physician are privileged, in an action against a railway company for the death of plaintiff's husband, it was error to allow the defendant to prove by decedent's physician that the cause of death was not caused by the injuries sustained.

2. WITNESSES. *Privileged communications to physician. Waiver.*

Where in a suit by a wife for the death of her husband, the defendant first introduced one of his physicians to show that the injuries sustained did not cause his death, the fact that the wife afterwards, introduced another of his physicians to rebut the testimony did not cure the error in allowing the defendant to introduce the privileged communications of their witness.

3. TRIAL. *Jurisdictions. Negligence. Sufficiency of evidence.*

Where the wife suing for the death of her husband had shown that his injuries were inflicted by defendant's running train, this under Code 1906, section 1985, so providing made out a *prima-facie* case of liability which defendant failing to explain an instruction for the defendant that plaintiff must prove by a preponderance of the evidence that decedent was injured by defendant's negligence was erroneous.

4. DEATH. *Grounds of action. Cause of death.*

   A wife suing for her husband's death, may recover, though the injury was not the sole cause of his death, for if the injury aggravated his condition or hastened or contributed to his death, she could recover.

APPEAL from the circuit court of Sunflower county.

HON. H. P. FARISH, Special Judge.

Suit by Myrtle Hamel against the Southern Railway Company in Mississippe. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Jas. R. McDowell,* for appellant.

The court erred in permitting Dr. S. T. Rucker to testify. This physician's testimony came within the privilege of Section 3695 of our Code, as a privileged communication, not to be disclosed without the consent of patient or his represervatives. It is contended that this privilege was waived because at the trial of the former case—No. 16496, 64 So. 847—another physician who treated the deceased had testified. Dr. Rucker did not testify in the trial of the first case, and he is not now the witness of the plaintiff, but was put on the stand by the defendant before any physician for the plaintiff had testified. So, our court must now decide whether the testimony of another doctor, in another case, on a different cause of action (growing out of the same accident, however), is a waiver of the privilege by the representatives of the patient. Our court has never passed on this point, and I find no case exactly in point in the books. In the *Messina Case,* 67 So. 963, the plaintiff himself testified but did not put any physician on the stand. The court there very properly held that the defendant Railroad Company could not introduce a physician, even though that physician was not employed by the plaintiff nor called in by him. *Baxter* v. *Cedar Rapids,* 105 Iowa, 599, *Dotton* v, *Albion,* 57 *Mich.* 575; *Mellor* v. *Railroad Co.,* 105 Mo. 455; *Hope* v. *Railroad Co.,* 110 N. Y. 643.

In the case of *Epstein* v. *Railroad Co.,* 48 L. R. A. (N. S.) 394, the authorities are collected, but I do not there find a case exactly in point. It will be seen that under this heading, at the bottom of page 399, the authorities seem to hold that where two or more physicians attend patients at different times, the examination by one does not operate as a waiver of the privilege as to the others, although they attend patient for the same illness. 10 Enc. Ev. 154, and notes; *Briesenmeister* v. *Knights of Pythias,* 81 Mich. 525.

"Statutes making incompetent the testimony of physicians and surgeons should be liberally construed." 10 Enc. Ev. 164.

The court erred in granting instruction number 4 requested by the defendant. Regardless of any other point in the case, I feel so sure the court will reverse the judgment of the trial court because of the granting of this instruction, that I would be willing to submit the case entirely on this one point.

Section 1985 of our Code established a rule of evidence. This section has been construed by our court as often as any other section in the code, and it is well settled that the plaintiff has no other burden than to show that the injury "was inflicted by the running of the locomotives or cars of such company, and this "shall be *prima-facie* evidence of the want of reasonable skill and care."

Instruction number 4 places upon plaintiff a burden which the law expressly exempts her from bearing. The plaintiff did not have to "prove by a preponderance of the evidence" that her husband "was injured by the negligence of the defendant;" and this instruction not only places this heavy burden upon her to satisfying the jury by a preponderance of evidence, but announces a rule of evidence exactly in conflict with the statute. Conflicting or contradictory instructions furnish no correct guide to the jury, and the giving thereof is erroneous." 38 Cyc. 1604.

"When an erroneous instruction is given, the error is not cured by the giving of another setting out a rule in

direct conflict with the rule stated in the erroneous instruction; the contradiction between the two leaves the jury without any safe guide and is of itself improper.'' *House* v. *Fultz,* 13 S. &. M. 39; *Southern Ry. Co.* v. *Kendrick,* 40 Miss. 344, 90 Am. Dec. 332; *Herndon* v. *Henderson,* 41 Miss. 584; *Railroad Co.* v. *Miller,* 40 Miss. 45; *Railroad Co.* v. *McGowan,* 82 Miss. 603, 46 So. 55.

Two cases were decided by this court last week (Feb., 19), which re-affirm this doctrine. See *Stevenson* v. *Railroad Co.,* No. 18836, and *Thomas* v. *Ry. Co.,* No. 18830.

In the Stevenson Case the jury was instructed that if they were ''in doubt about this proposition and cannot say of a certainty which was the cause of the damage'' then they should return a verdict for defendant.

Our court reversed the case of *Gentry* v. *Railroad Co.,* 67 So. 849, which contained an instruction requiring the plaintiff to remove ''by a clear preponderance of the evidence'' any doubt which might be in the minds of the jury.

There can be no doubt about this error, and, as above stated, the case must be reversed for this error if for no other.

The court fell into error in giving instruction number 5 for the defendant and in refusing certain instructions requested by the plaintiff, and in thus announcing to the jury a theory of law which precluded the plaintiff from a recovery unless the injury was directly responsible for the death of appellant's husband.

It was plaintiff's theory that, even though her husband died of pellagra, it was superinduced or his condition aggravated and the development of the disease hastened, because of his lack of power to resist its ravages after this serious injury: According to the theory of the law as announced by the court, death must be practically instantaneous, or at least must follow shortly after the injury, in order that a recovery may be had. The law seems to be to the contrary.

*Frank E. Everett,* for appellant.

We submit that the ruling of the court, in allowing
Dr. Rucker to testify, was the grossest sort of error.   Mr.
Hamel had by his family, and local physician, been taken
to Memphis, and placed in the Lynhurst Sanatorium, in
the care and custody, and for treatment by Dr. Rucker,
as his physician, and certainly, under section 3695 of the
Code of 1906, which provides that: "All communications
made to a physician or surgeon by a patient under his
charge are hereby declared privileged."

And under the case of the *Y. & M. V. R. R. Co.* v. *V. P.
Messina,* reported in the 67 So. 963, decided by this court
at the March, 1915, term, the stamp of disapproval is put
upon such party's testimony.   This court, in holding these
communications between physician and patient to be privi-
leged, said: "And the physician, however willing he may
be to violate the confidence of this patient, will not be per-
mitted to do so, by the wise provisions of the Statute."

In other words unless he is called to the stand by the
plaintiff himself, as the statute provides, this court has
said, and very properly, so that he is absolutely incompe-
tent to testify when offering himself as a witness, or of-
fering to testify for the other party, over the objection
of his patient.   I could cite the court to numerous author-
ities holding the same thing, but as this court has so re-
cently settled that question, I will not burden you with
a list of authorities.

It may be said by counsel for appellee that we have
waived our rights to object to the testimony of Dr. Rucker,
because we afterwards placed Dr. Kent on the stand, but I
call the court's attention to this fact, that the fact that
Dr. Kent was in rebuttal placed upon the stand by the
plaintiff could not prejudice our rights, for it was only
to clear up some of the testimony of Dr. Rucker that Kent
was placed on the stand.   The court will see by reference
to the testimony of Dr. Rucker, that I was trying to get
from him an opinion, which he left so clouded' with the

jury that it was necessary for the plaintiff, after the defendant had introduced this sort of proof, to show by same responsible physician that even though Hamel had pellagra that the injuries would have augmented and accelerated disease to such an extent as to hasten his death.

Instruction number four is so plainly erroneous that I hardly know how to present it to the court. Quoting it literally, it is as follows: "The court instructs the jury that the law is that before the plaintiff can recover against the defendant in this case, that she must prove by a preponderance of the evidence to your satisfaction, first, that J. B. Hamel was injured by the negligence of the defendant, and, second, that the death of the said J. B. Hamel was caused by such injury, and unless she has so proven, then your verdict must be for the defendant."

This instruction is squarely in the face of section 1985 of the Code, which provides that in all actions against Railroad Companies, for damages done to them, or property, proof of injury inflicted by the running of locomotives or cars of such company shall be *prima-facie* evidence of the want of reasonable skill, and care, on the part of the servants of the company, in reference to such injury. This section of the code has been construed in this court so often that it seems impossible for a judge to commit error in granting instructions in this sort of a case. As far back as *Railroad Company* v. *Hamilton,* 62 Miss. 503; *Railroad Company* v. *Doggett,* 67 Miss. 250, it has been held that where the injury was shown to have been inflicted by the running of a locomotive or cars that the Railroad Company must exonerate itself from liability by explaining how the injury occurred. In other words the statute makes a *prima-facie* case of negligence when the facts show that the injury complained of was done by a running car or locomotive, and shifts the burden then to the Railroad Company, and this court, in case after case, has held that it was not upon the plaintiff to show negligence, where he showed that the injury oc-

curred by the running of a train, because that was presumed under the statute, and the burden then rested upon the defendant. See *Railroad Company* v. *Brooks,* 85 Miss. 269; *Railroad Company* v. *Landren,* 89 Miss. 399; *Railroad Company* v. *Cole,* 57 Miss. 556; *Crawford* v. *Railroad Company,* 59 So. 86; *Fuller* v. *Railroad Company,* 100 Miss. 705; *Jefferson* v. *So. Ry. Co.,* 62 So. 643; *Railroad Company* v. *Carney,* 68 So. 166.

The court will notice that instructions Numbers five, six, and seven, asked by the plaintiff, and refused by the court, are all upon the same theory; that is, to the effect that if Hamel had pellagra at the time of his injuries, or developed it afterwards, and that by reason of the injury his strength and vitality was so impaired, so as to render the disease incurable, or uncontrolable, and that it would not yield to treatment by reason of the impairment of his strength and vitality by the accident, or that if the injuries developed, excited, augmented, or accelerated the disease, and hastened his death, that the plaintiff was entitled to recover. On this question I cite the court to: 8 Ruling Case Law, page 438, Paragraph 11: and cases cited therein. Also see, 13 Cyc., page 31, where the same principle is announced. *Louisville & N. R. Co.* v. *Jones,* 3 So. 904; *Lapleine* v. *Morgans L. & T. R. & S. S. Co.*

From the authorities thus cited, it is clear that instructions five, six, and seven should have been given to the plaintiff, and instruction number five, which was given to the defendant, should have been refused.

I respectfully submit that this case should be reversed and remanded.

*Moody & Williams* and *T. C. Catchings,* for appellee.

There is no question but that the privilege created for the benefit of the patient and for the sole purpose of maintaining the privacy and secrecy of the sickroom, can be waived by the patient, or those representing him,

and there is nothing in the case of *Y. & M. V. R. Co.* v. *Messina*, 67 So. 963, cited by counsel for appellant in conflict with this position.

In fact, all the courts, so far as we· have been able to find, after an exhaustive research, hold that the privilege may be waived. *Epstein* v. *Pennsylvania R. Co.*, 48 L. R. A. (N. S.)·394; 4 Wigmore, Ev., 2388; *Fox* v. *Union Turnp. Co.*, 56 App. Div. 368, 69 N. Y. Supp. 551; *Morris* v. *New York, O. & W. Co.*, 148 N. Y. 88; 51 Am. St. Report, 675; 42 N. E: 410. *Elliott* v. *Kansas City*, 6 L. R. A. (N. S.) 1082, 96 S. W.·1023; *Renihan* v.·*Dennin*, 103 N. Y. 573, 57 Rep. 770, ̀9 N. E. 320; *Schlotterer* v. *Brooklyn & N. Y. Ferry Co.*, 89 App. Div. 508, 85 N. Y. Supp. 847; Wigmore, section 2390. · Rule 11 of the supreme court is as follows: "No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, unless it shall affirmatively appear from the whole record, that such judgment has resulted in a miscarriage of justice."

Objection is next made to instruction No. 4 given the defendant. In this case the plaintiff sued, alleging that by the negligent operation of defendant's train J. B. Hamel was injured, and his death ̀was caused thereby.

If no evidence at all had been introduced, the defendant would clearly have been entitled to a peremptory instruction, and it was only when the plaintiff had, in some legal way, introduced proof that Hamel was negligently injured by the defendant, and that such injuries resulted in his death, that there was anything for the defendant to rebut.

This instruction is certainly not in the face of section 1985 of the Code of 1906.

Instruction No. 5 is complained of, because the jury were told that the verdict should be for the defendant, unless it was shown that Hamel's death was caused by injuries sustained by him at the time and place named in the declaration. It will be seen by an inspection of the declaration that the suit was not for hastening the death,

or shortening the life of Hamel, but directly for causing the death, the allegations of the declaration being:

James B. Hamel was violently thrown from the running car of said train, precipitated to the ground, and thereby breaking some of his limbs, and otherwise bruising, injuring and mangling his body to such an extent that he soon died from the injuries received by him, and caused by his being so violently thrown from the running train on which he was a passenger; his death being the direct result from the injuries received by him from the careless, negligent, and reckless act of the defendant company. The said defendant Company . . . so carelessly, negligently, and recklessly operated said train, so as to cause the injuries so received by the said James B. Hamel, and from which said injuries he, the said Hamel, died, and by reason of the death of the said James B. Hamel plaintiff was greatly damaged, in the sum of twenty-five thousand dollars."

This court in the former trial held that this is a suit for Hamel's death alone, saying: "This suit seeks to recover damages for the death alone," 66 So. 428. So the law of the case is settled on that point.

It was the theory of the defendant that on this declaration defendant was not liable at all, unless the evidence showed that the injury received by Hamel, in falling from defendant's train, caused his death, and that the company was not liable for any hastening of his death, by accelerating the sickness from which he was suffering. It was plaintiff's theory that the defendant was not only liable for such injuries as caused plaintiff's death, but for such injuries as might have shortened his life.

The court accepted the plaintiff's theory, and the case was submitted to the jury with appropriate instructions, announcing that theory.

Accordingly, the court refused instruction No. 3, by which it was attempted to tell the jury that the company was not liable for the hastening of the death of the plaintiff, and refused defendant's instructions numbers 10

and 11, which set forth our theory of the case. The court adopting plaintiff's theory, gave her instruction No. 3.

Plaintiff cites the case of *L. & N. R. R. Co.* v. *Jones,* 3 So. 904, in which the supreme court of Alabama, discussing the questions raised by plaintiff's refused instruction No. 5, said: "There were questions for testimony, for argument and for deliberation by the jury, but no legal presumption arises either one way or the other out of the facts hypothesized in the first charge asked by the defendant. The circuit court did not err in refusing this charge."

The same might well be said of all said instructions 5, 6, and 7, that they are argumentative, and should have been refused; and the proof in this record shows that plaintiff had pellagra; that he recovered from the injuries received when he fell from the train; that he afterwards died with pellagara, and that the injuries received in the accident were not fatal or permanent.

So we say that there is no proof in the record on which instructions Nos. 5, 6, and 7, might have been predicated, but if there had been, plaintiff had the advantage of every legal principle contended for in those instructions in the instruction given her. Therefore, she was not harmed by the refusal of these instructions.

In passing upon this case it will be remembered that the jury had submitted to them two questions: First, was the defendant negligent as to the injury from which plaintiff's intestate suffered? Second, did that injury cause his death?

Plaintiff established a *prima-facie* case, by showing injury from the running of a train, or rather by showing that her intestate was found injured near the railway track of the defendant, having been last seen on board its train.

Defendant then showed that the train was properly managed and operated by competent servants. All of the circumstances were shown, and from them it appeared that plaintiff's intestate unquestionably was injured by

a mis-step, as he was going from one platform to another. The jury, therefore, had the right to infer, and their verdict is a clear response, that the defendant was not negligent in causing the injury sued for. It is our contention that appellant got more than she was entitled to when she had the case submitted to a jury to say whether or not the injuries were the proximate cause of her intestate's death. As supporting our contention, in this respect, we call the court's attention to the case of *Scheffer* v. *Wash. City & Midland & Great S. R. Co.*, 105 U. S. 249, 29 L. Ed. 1070.

This case was decided in 1882, but the reasoning is so sound that we call the court's attention to it. A well reasoned case on the same subject, decided on the 28th day of July, 1916, is the case of *Anton* v. *Chicago M. & St. P. Ry. Co.* (Wash.), 159 Pa. 115. In that case the supreme court of Washington held that: "The disease with which appellant is afflicted is not shown to be the usual, natural, or probable consequence of the slight injury sustained. The contrary is shown, and the case falls within the general principles so well stated in *Milwaukee & St. P. Railway Co.* v. *Kellogg*, 94 U. S. 469, 24 L. Ed. 256, and adopted in *Sheffer* v. *Railroad Co.*, 105 U. S. 249, 26 L. Ed. 1079."

HOLDEN, J., delivered the opinion of the court.

This is a suit by Mrs. Myrtle Hamel, appellant, against the appellee, Southern Railway Company, to recover damages for the death of her husband, James B. Hamel, alleged to have resulted from injuries inflicted by the running of the cars of appellee railroad; and from a jury verdict and judgment in favor of the railroad company she appeals here. The case before us now is an action to recover damages only for the death of Mr. Hamel; a judgment for the injuries inflicted up to the date of his death having been obtained, and settled, in a suit filed by the appellant against the appellee prior to the filing of the

case before us now. Therefore the only questions in the instant case are whether the deceased, Hamel died from the injuries inflicted by the appellee railroad or from some other cause, or whether such injuries hastened his death or contributed directly to it. These were the issues before the jury in the court below, and a verdict was returned in favor of the defendant railroad.

The appellant assigns several grounds of error but we shall notice and discuss only three of these contentions, viz.: First. That the court erred in allowing Dr. S. T. Rucker, a witness for the defendant railroad, who was the attending physician of the deceased, to be introduced by the defendant and testify, over the objection of the plaintiff below, as to the condition of deceased and the cause of his death. Second. That the court erred in granting to the defendant below instruction No. 4, which reads as follows:

"The court instructs the jury that the law is that before the plaintiff can recover against the defendant in this case, she must prove by a preponderance of the evidence to your satisfaction: First, that J. B. Hamel was injured by the negligence of the defendant; and, second, that the death of the said J. B. Hamel was caused by said injury, and unless she has so proven, then your verdict must be for the defendant."

Third. That the court erred in granting to the defendant instruction No. 5, which reads as follows:

"The court instructs the jury that the burden is on the plaintiff to prove, by a preponderance of the evidence, to your satisfaction, that J. B. Hamel's death was caused by the injuries alleged to have been sustained by him at the time and place named in the declaration, and if from all of the evidence in this case you are unable to say what caused his death, then you must find for the defendant, and this is true even though you may believe from the evidence that the defendant is liable for such injury."

We will discuss the questions in the order given above.

It appears that the plaintiff below introduced her testimony, and proved her case under our *prima-facie* statute (section 1986, Code of 1906), and rested. She did not introduce any physician to testify in reference to the injuries or death of her husband. After the plaintiff rested, the defendant railroad introduced Dr. S. T. Rucker, a witness in its behalf, who was the attending physician of the deceased Hamel, who was a patient under his, Dr. Rucker's, charge at the time and prior to his death. Strenuous objection was promptly made by the appellant to the introduction of this testimony, which objection was overruled by the court, and Dr. Rucker was permitted to testify fully as to the condition, injuries, and cause of the death, of the deceased; his testimony being to the effect that Mr. Hamel's death was not caused or hastened by the injuries inflicted by the railroad, but that he died from pellagra. The sole issue in the case being whether or not the injuries inflicted by the railroad had caused or contributed to the death, this testimony of Dr. Rucker was vital and very damaging to the plaintiff's case. Section 3695, Code of 1906, provides:

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient."

In view of the plain meaning and purpose of the above statute it was palpable error to permit this doctor to testify to these matters which are privileged communications, a disclosure of which cannot be required in any legal proceeding except at the instance of the patient.

But counsel for the appellee here contends that the privileged communication under the statute was waived by the appellant, because the appellant introduced Dr. Kent, a physician of deceased, as a witness in rebuttal. This con-

tention is unsound, for the reason that the introduction of the testimony by the appellant in rebuttal could, in no way, cure the error and wrong that had been committed in the first instance by the appellee railroad in introducing the attending physician of the deceased at a time when the appellant had introduced no attending physician's testimony whatever as to the cause of death, and had not, therefore, in any way opened the door to inquiry as to the injury and cause of death of deceased by the testimony of any attending physician.

We do not pass upon the question now as to whether the plaintiff below must have waived her right, under the statute, if she had, in proving her case, introduced a physician who had attended the patient, and he had testified on the particular subject of the cause of the death of the deceased, and thereby opened the door to a full inquiry on that particular subject which she had thus put in issue in the case by the testimony of any physician in charge of the patient.

As to the second contention of appellant, we think that instruction No. 4, granted to the defendant below, was error. The error appears in this: That it was not incumbent upon the appellant to prove by a preponderance of the evidence that Mr. Hamel was injured by the negligence of the appellee railroad, because the appellant had made out her case under our *prima-facie* negligence statute (section 1985, Code of 1906), and, the railroad having failed to explain the injury and exculpate itself, the proof of the injury inflicted by the running of the appellee's locomotives and cars was all that was required of the appellant, and it was not necessary that the appellant prove negligence on the part of the railroad, but the proof made under the statute was sufficient. When proof of injury is made by the plaintiff under the *prima-facie* statute in any case, the plaintiff is never required to show negligence of the defendant until the defendant has explained the injury by testimony putting it beyond and without the

statute, in which event both parties would then stand upon the same legal footing, and the plaintiff would have the burden of showing negligence on the part of the defendant before a recovery could be had. *Railroad* v. *Thornhill,* 106 Miss. 387, 63 So. 674; *Railroad* v. *Hamilton,* 62 Miss. 503; *Railroad* v. *Doggett,* 67 Miss. 250, 7 So. 278; *Railroad* v. *Brooks,* 85 Miss. 269, 38 So. 40; *Railroad* v. *Landrum,* 89 Miss. 399, 42 So. 675; *Fuller* v. *Railroad,* 100 Miss. 705, 56 So. 783; *Jefferson* v. *Railway Co.,* 105 Miss. 571, 62 So. 643; *Railroad* v. *Carney,* 109 Miss. 233, 68 So. 166.

As to the third ground of error, which was the granting of instruction No. 5 to the appellee, and the refusal of the court to grant any instruction to the appellant stating the true rule, we think was error. Instruction No. 5 is erroneous because it instructs the jury, in effect, that no recovery by the plaintiff could be had unless the injury inflicted by the railroad was the sole cause of the death, and at the same time denying to the plaintiff the benefit of the true rule, as announced by instructions requested by plaintiff, that the plaintiff should recover if the injuries inflicted aggravated the condition of the deceased and hastened his death, or contributed directly to his death. We think the refusal of the lower court to grant the instructions requested by plaintiff announcing this rule, and the granting to defendant the instruction No 5, was substantial error. R. C. L., vol. 8, p. 438, par. 11, 13 Cyc. p. 31; *Louisville, etc., R. Co.* v. *Jones,* 83 Ala. 376, 3 So. 904; *Tidwell* v. *State,* 70 Ala. 33; *Lapeine* v. *Morgan's etc., Co.,* 40 La. Ann. 661, 4 So. 875, 1 L. R. A. 378.

The judgment of the lower court is reversed, and the case remanded.

*Reversed and remanded.*