## YAZOO & M. V. R. Co. *v.* MESSINA.

[67 South. 963.]

1. CARRIERS. *Derailment of train. Prima facie evidence. Instructions. Personal injuries. Proof. Trial. Request for instructions. Necessity. Appeal and error. Harmless error. Surgeons. Privileged Communications. Witnesses. Free transportation. Application of statute.*

In a suit for injuries caused by the derailment of a train on which plaintiff was riding, either as a trespasser or licensee, when plaintiff's testimony, as to the speed of the train, tended to show that the engineer's negligence was wanton and in reckless disregard of consequences, it was not error to give an instruction to plaintiff based upon the *prima facie* statute, section 1985, Code 1906, which provides, that in all actions against a railroad company for injury to person or property, proof of injury by the running of the locomotives or cars shall be *prima facie* evidence of want of reasonable skill and care of the servants of the company.

2. CARRIERS. *Personal injuries. Instruction. Proof.*

In an action for injuries caused by the derailment of a train being run at an excessive speed, an instruction to find for plaintiff "if all the evidence left it doubtful," as to whether defendant had met the burden placed on it by the *prima facie* statute (Code 1906, section 1985) was erroneous, as placing on defendant a greater burden than the law required it to sustain; the burden of proof under the statute being merely that of showing the facts, when the liability will be determined by the facts as shown.

3. TRIAL. *Instructions. Request for.*

Under Code 1906, section 793, prohibiting the giving of instructions not requested in writing, defendant could not predicate error on the failure of the court to give instructions counter to those given at plaintiff's request, where no request was made for such counter instructions.

4. TRIAL. *Instructions. Request. Necessity.*

In an action for personal injury, is not error for the court to fail to give an instruction limiting the *quantum* of damages as provided in the concurrent negligence statute, when the same was not asked by the defendant.

5. APPEAL AND ERROR. *Harmless error. Instructions.*

Where in an action for personal injury from the derailment of a train at a point where water covered the track, the evidence showed, that although the engineer knew of the threatened danger and was rounding a curve, and on account of existing weather conditions, could not see further than twenty-five yards in front of his engine, he was running his engine at such speed that he was unable to bring it to a stop within less than one hundred and fifty yards, in such case, the giving of an instruction which was erroneous, as placing on defendant a

greater burden than was required to meet the *prima facie* case made out by proof that the injury was inflicted by a running train, was harmless.

6. WITNESSES. *Surgeons. Knowledge acquired from examination of.*
By Code 1906, section 3695 providing that communication made to a surgeon by a patient under his charge shall be privileged, it was the intention of the legislature to close the lips of the physicians concerning any and everything he knows about the patient by oral communication or from a physical examination of his patient.

7. CARRIERS. *Free transportation. Application of statute.*
The act of Congress to regulate Commerce approved June 29, 1906, chapter 3591, 34 Stat. 584, amended April 13, 1908, chapter 143, 35 Stat. 60, and June 18, 1910, chapter 309, Stat. 544 (U. S. Comp. St. 1913, sec. 8563) prohibiting carriers from giving any free pass or free transportation, does not apply where a person is injured from the derailment of a train while he is riding on the tender of an engine with the consent of the engineer.

APPEAL from the circuit court of Holmes county.
HON. MONROE McCLURG, Judge.

Suit by V. P. Messina against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*R. V. Fletcher* and *Mayes & Mayes*, for appellant.

*Barbour & Henry, Burch & Stricker* and *C. D. Potter,* for appellee.

COOK, J., delivered the opinion of the court.

Mr. Messina instituted suit against the railroad company for personal injuries, and recovered a judgment for ten thousand dollars. The defendant railroad company appeals.

The evidence for plaintiff discloses that plaintiff had been employed by the railroad company as a switchman; that the day before the injury he had de-

109 Miss. 10

cided to lay off and go to Memphis, and in pursuance of this purpose he left Jackson on a freight train to go to Canton; he traveled deadhead, with the permission of the train crew, to Canton. About midnight of the next day he and several companions secured the permission of the engineer of the north-bound passenger train to ride on the tender of the locomotive from Canton to Memphis. The engineer denied this, and said he had no knowledge that the party was on the tender. Before the train left Canton the engineer was given a telegram from the train dispatcher, which read: "More or less rain all over district to-night." The plaintiff, Messina, and his companions boarded the locomotive as it pulled out of Canton, and rode to Durant on the tender. When the train reached Durant the engineer received another telegram from the train dispatcher, reading:

"No. 5 reports water high between Beatty and Sawyer; have had very hard rains in there past three hours; water over the track but no damage reported, at Sawyer."

The train then proceeded on its way. There was no scheduled stop between Durant and Winona. After the train passed Beatty, it was then in the storm zone. The engineer testified that he then reduced his speed from fifty miles per hour to thirty-five miles per hour. At the place where the derailment occurred, and for some distance south thereof, a creek paralleled the railroad right of way, crossing the track under a trestle about thirty yards wide. About two-hundred and fifty yards south of this trestle there was a curve in the track, and the trestle could not be seen from a north-bound train until the curve was rounded. The locomotive was running thirty-five miles per hour according to the engineer's testimony, and fifty to sixty miles according to plaintiff's evidence, when the water over the track came in view of the engineer, after he had passed the curve. The engineer said that he could not have stopped

his train in less than one-hundred and fifty yards, meaning, perhaps, that if the train had remained on the track, it would not have been possible to have stopped the train in less than one-hundred and fifty yards. When the danger was discovered the emergency brakes were applied; the engine ran one-hundred yards, leaving the track in the meantime, and finally "laid down," with the machinery still running. Three of the cars attached to the locomotive were derailed, plaintiff was caught between the tender and one of these cars and permanently crippled. The extent of the injuries and the consequent suffering justified a verdict for the amount rendered by the jury.

There is no material conflict in the evidence, except upon the question as to whether or not plaintiff was riding on the engine with the knowledge and consent of the engineer. This question was a question of fact, and its solution was submitted to the jury. It is conceded by counsel for plaintiff that plaintiff was a trespasser, or a mere licensee, and that the defendant owed him no duty, except to refrain from willfully and wantonly injuring him. If the engineer did not know that plaintiff was riding on the engine, it is conceded that plaintiff must lose his case. Accepting this as a correct interpretation of the law of the case, we find that the disputed question of fact was submitted to the jury.

Appellant earnestly insists that the facts as to just how and why the wreck occurred were proven, and therefore the instruction upon the *prima facie* statute (section 1985, Code of 1906) should not have been given. This contention, we think, is not supported by the record. If the evidence for plaintiff in regard to the speed of the train is to be taken as true, the negligence of the engineer was so flagrant that the court would have been warranted in instructing the jury peremptorily that his conduct was wanton and in reckless disregard of

the consequences. If it can be said that the engineer's estimate of the speed of the train raised a question of fact for the jury's decision, we think the conflict of evidence on this point was submitted to and decided by the jury.

The instruction based upon the statute was a little too stout in some particulars, one of which is that the jury should not have been told, "if all the evidence leaves it doubtful," as to whether the defendant has not met the burden. As recently pointed out by this court in *Gentry* v. *Gulf & Ship Island R. R. Co.*, 67 So. 849, this language places a greater burden upon the defendant than the law requires it to sustain. In order to meet the *prima facie* case made by the proof that the injury was inflicted by a running train, it is not necessary for the defendant to do more than to disclose the facts, and if this is done the liability of defendant depends upon the facts and not upon the statutory presumption.

The argument upon the alleged error of the trial court in refusing to give to the jury the counter instruction the defendant was entitled to receive if it had requested same. It is true that this court in the *Thornhill Case*, 63 So. 674, and in the *Daniell Case*, 66 So. 730, said that:

"When the facts and circumstances have been ascertained, they must be able to say therefrom that the defendant was guilty of negligence."

The court below would, no doubt, have so instructed the jury, if the defendant had seen fit to request such instruction. The defendant did not ask for this instruction, and cannot complain that the court did not do what the statute (section 793, Code of 1906) forbids him to do, unless requested in writing. By the uniform decisions of this court the circuit judge cannot volunteer instructions to the jury, and if he does so he has exceeded his power. The plaintiff's instruction stated his side of the case, and if the defendant had requested the counter instruction the law of the case would have been

complete, except as to the defects noted in plaintiff's instruction. Inasmuch as the trial court was not asked to give the counter instruction, and inasmuch as the court was without power to volunteer same, no error can be predicated of his failure to give the instruction.

It is argued that the court did not limit the *quantum* of damages which plaintiff was entitled to recover, in accordance with the provisions of our concurrent negligence statute. Defendant did not ask an instruction along this line, and we think it was error of defendant, rather than the error of the court, that defendant did not get the benefit of the law.

In this case the train was a heavy passenger train, consisting of one mail and one express car, a baggage car, two day coaches, and five sleepers. The crew in charge of this train knew of the threatened danger, and when the train entered the danger zone, it seems to us that the engineer should have reduced his speed to the point where he could have brought it to a standstill in less than one hundred and fifty yards. The evidence shows that he was rounding a curve in the road, and on account of the existing weather conditions he could not see further than twenty-five yards in front of his locomotive. This, we believe, was taking chances with the human lives in his charge, that was little, if any, short of a reckless indifference to the consequences. It appears that at this point especially the loss of time, as compared with the impending danger, was of no consequence, and ordinary prudence required that the train should have been under perfect control to avoid the probable catastrophe. This being our view of the record, taken most favorably for defendant, it follows that the instructions criticized could not have prejudiced appellant.

After the wreck appellant sent its own surgeons to take charge of the injured, and to carry them to the hospital at Winona. There was some evidence tending to

show that plaintiff was not given that care and consideration which he was entitled to receive while he was at the scene of the wreck. To rebut this evidence appellant offered to prove by its surgeons that they examined plaintiff at this time, and that his wounds had been dressed and properly treated, and that this was all that could have been done under the circumstances. At the instance of the plaintiff the trial court excluded this evidence from the jury. Section 3695 of the Code of 1906 provides:

"All communications made to a physician or surgeon by a patient under his charge . . . are hereby declared privileged."

It will be noted that plaintiff was a patient under the charge of the surgeons selected by defendant. By our statute "all communications" made to a physician by his patient are privileged. It is argued by appellant that the evidence offered did not consist of "communications," by the patient to the physician; that the physician's information was gained by an inspection of the patient, and that the statute did not cover this character of evidence. Taken literally, this view of the statute may be sound, but when we consider the manifest policy of this sort of legislation, we believe that what appellant sought to prove was communicated to him by the patient. Except as a physician, he was not qualified to testify. His knowledge of the matter inquired about came to him from his examination of his patient. It is not necessary that the communication should be made by words in order to make it privileged. There is no more sacred relation of confidence than the relationship of physician and patient, and it was, in our opinion, the intention of the legislature to close the lips of the physician concerning any and every thing he knows about the patient by oral communication or from a physical examination of his patient. Quoting from *Briggs* v. *Briggs,* 20 Mich. 34:

"He had no knowledge upon the subject except what he obtained in the course of his professional emloyment, and the case appears to be directly within the statute. . . . We do not understand the information here referred to, to be confined to communications made by the patient to the physician, but regard it as protecting, with the veil of privilege, whatever, in order to enable the physician to prescribe, was disclosed to any of his senses, and which in any way was brought to his knowledge for that purpose."

The supreme court of Missouri had under review a statute similar to ours in *Gartside* v. *Connecticut Mutual Life Ins. Co.*, 76 Mo. 446, 43 Am. Rep. 765, and said:

"The construction contended for by defendant's counsel that by the statute, a physician is forbidden to disclose only such information as may have been communicated to him orally by his patient would, in our opinion, nullify the law. To hold that, while under the statute a physician would be forbidden from disclosing a statement made to him by his patient that he was suffering from syphilis, and to allow him to state as the result of his observation and examination of the patient that he was diseased with syphilis would be to make the statute inconsistent with itself. It is doubtless true that a physician learns more of the condition of a patient from his own diagnosis of the case than from what is communicated by the words of the patient; and to say that while the mouth of a physician is sealed as to the information acquired orally from his patient, it is opened wide as to information acquired from a source upon which he must rely, viz., his own diagnosis of the case, would be to restrict the operation of the statute to narrower limits than was ever intended by the legislature and virtually to overthrow it."

The statutes of the several states vary in the language employed, but in our view they were all designed to accomplish the same purpose. Our statute in protect-

ing the patient makes privileged "all communications," and we think it would be absurd to say that what the patient says to the physician is privileged, but what is communicated to the physician by his expert examination and exploration of his patient's body is not privileged. The oral communications are usually of little importance, but the physical examination is always of prime importance. The fact that the physicians in the present case were not called by the plaintiff, but were sent by the defendant to examine or treat plaintiff, does not change the legal aspect of the case. The physicians were acting in their professional capacity, and the plaintiff was their patient, and all communications to their professional senses are privileged, and the physician, however willing he may be to violate the confidence of his patient will not be permitted to do so by the wise provisions of the statute. In the light of such authorities as we have been able to find, the overwhelming weight are in accord with this view of the law. The cases may be found in the notes to *May Woods* v. *Town of Lisbon,* 16 L. R. A. (N. S.) 886.

It is also contended by appellant that the plaintiff was violating the act of Congress to regulate commerce, approved June 29, 1906, and amended April 13, 1908, and June 18, 1910, which thus provides:

"No common carrier subject to the provisions of this act, shall after January 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except . . . to their families, etc.

"Any common carrier violating this provision shall be deemed guilty of a misdemeanor and for each offense, on conviction, shall pay to the United States a penalty of not less than one hundred dollars nor more than two thousand dollars, and any person, other than the persons excepted in this provision, who uses any such interstate free ticket, free pass, or free transportation, shall be subject to a like penalty."

We do not understand that the act of Congress referred to has any application to the facts of this case. The common carrier did not issue any free transportation to this plaintiff, and he was not using any such free transportation. The engineer in charge of the locomotive pulling a passenger train under no conceivable circumstances has any power to issue free transportation to any person, and we are unable to see the force of the argument along this line. Certainly, a common carrier would not be liable to the penalty provided by the act of Congress should some employee, having no sort of connection with the transportation of passengers, assume to issue a free pass to some prohibited passenger. If an engineer could lawfully permit a person to ride free, it seems to us that the plaintiff in this case would be entitled to the same degree of care that other passengers are entitled to receive. This seems clear, unless the act of Congress would change the rights of the passenger. It is clear to us that the engineer was not authorized to carry plaintiff free, and it is also manifest that the act of Congress is not directed against acts of the character here involved. As we interpret the act of Congress and the regulations adopted by the Interstate Commerce Commission, neither are directed against acts such as are disclosed by the record in this case. After a careful review of the entire record, and after giving due consideration to the able and exhaustive briefs of counsel for appellant, we can find no error of sufficient importance to justify us in disturbing the judgment of the trial court. The Daniell Case seems to have been unduly magnified. The gist of that case may be found in this sentence:

"The rule invoked by the instructions here under consideration is one which should always be acted upon by the court in determining whether a peremptory instruction should be granted, but was not intended to be given in charge to the jury as a guide to be followed by it in arriving at its verdict."

The court did not, by this sentence, intend to say that it was improper to instruct the jury that proof of injury by the running of the train was *prima facie* evidence of negligence. This court has repeatedly held that that rule could be given in charge to the jury, even when all the facts and circumstances were in evidence. The court merely held that the rule that "the circumstances of the accident must be clearly shown, and the facts so proven must exonerate the company from blame," was the rule for the guidance of the court in determining whether or not it could be said, as a matter of law, that the burden of the statute had been met and overthrown. Whether or not the giving of the instruction in the form criticized in Daniell's Case will be held as prejudicial error will necessarily depend upon the facts of each case.

*Affirmed.*