DAVIS, Director General of Railroads *v.* ELZEY.

[88 South. 630, No. 21827.]

1. RELEASE. *Capacity to make settlement for injuries held for jury.*
Where a party was injured in a collision with a train of a railroad company, and where a release and settlement is pleaded in bar of the action, and where the evidence is in conflict as to his capacity to make an agreement, the question is for the jury, and its decision is binding.

2. NEGLIGENCE. *Contributory negligence no bar under statute.*
Under our joint negligence statute (chapter 135, Laws of 1910; sections 502 and 503, Hemingway's Code), a plaintiff in a damage suit for personal injury is not debarred from a recovery, though he negligently drove upon a railroad track without stopping, looking, and listening, if the railroad company was also guilty of negligence in not sounding the whistle or bell, and in running through a municipality at a greater rate of speed than allowed by law in violation of the statutes of the State.

3. RAILROADS. *Punitive damages recoverable for injuries during federal control.*
Under the provisions of the Federal Control Act of August 29, 1916, and Act March 21, 1918 (U. S. Compiled Statutes 1918, Compact Edition, p. 458), punitive damages may be recovered in a suit for personal injury where the same could be recovered before the federal control was assumed, the said acts providing

that while under federal control the carriers shall be subject to all laws and liabilities as common carriers whether arising under state or federal laws, or at common law, except so far as may be inconsistent with the provisions of said act. In all other respects it was the intent of Congress to leave the laws of the states in full force.

4. RAILROADS. *Executive order held not to preclude recovery of punitive damages.*

General Order No. 50, directing all suits against all carriers, except for "penalties," etc., to be brought against the Director General, and not against the carriers, does not preclude the recovery of punitive damages in an action for personal injury against the Director General where the proper elements for the recovery of punitive damages exist. The actions for penalties, excepted in the General Order No. 50, are for such penalties as may be sued for and recovered in a separate action. Punitive damages are not recoverable in a separate suit, nor as a matter of right, but may be allowed in proper cases by the jury, or they may be denied in the discretion of the jury, though the elements authorizing their allowance exist in the evidence .

5. WITNESSES. *Testimony of physician attending patient not admissible unless consented to by patient; privilege held not waived.*

Under section 3695, Code of 1906 (section 6380, Hemingway's Code), the testimony of a physician, where the relation of physician and patient exists, is not admissible as to matters disclosed by virtue of the relation without the consent of the patient; and the placing of other physicians on the witness stand to testify as to facts learned at the same time because or through the relation does not waive the patient's right to object to the evidence of his physician, though the examination of the patient was made jointly. *U. S. F. & G. Co.* v. *Hood,* 87 So. 115, and other cases cited.

6. APPEAL AND ERROR. *Railroads. Instruction on presumption of negligence held erroneous, but harmless.*

It is error in a suit for personal injuries where the facts are disclosed to give the following instruction: "The court charges the jury that under the law proof of injury inflicted by the running of trains is *prima-facie* evidence of the want of reasonable skill and care on the part of the servants of the defendant with reference to such injury, and this presumption of negligence on the part of defendant's servants remains and controls in the case until the facts and circumstances with reference to the injury

have been satisfactorily proven to the jury, and if you are satisfied by a preponderance of the evidence that the plaintiff was injured by the running of a train of defendant, but are in doubt as to the facts and circumstances attending the injury, the defendant will be presumed to have been guilty of negligence and you will find for the plaintiff." But the giving of the instruction in the present case is not reversible error, because the evidence for the defendants shows it was negligent under sections 3546 and 3547, Code 1892 (sections 4043, 4045, Code of 1906; sections 6667 and 6669, Hemingway's Code).

APPEAL from circuit court of Lee county.

HON. C. P. LONG, Judge.

Action by Alex Elzey against James C. Davis, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Affirmed.

### ON SUGGESTION OF ERROR.

On suggestion of error. Suggestion sustained, and case remanded for new trial as to damages alone; judgment being affirmed as to liability.

For former opinion, see 88 So. 630.

*J. M. Boone,* for appellant.

The evidence offered by appellee in support of his replication is not clear and convincing and indubitable that the release was secured by fraud or misrepresentation, and therefore it failed to support the replication. *Railway* v. *Trumbull,* 71 Miss. 1039.

We further contend that plaintiff's own gross negligence was the sole cause of his injury. The verdict in this case is excessive, and the result of passion and prejudice. The court erred in excluding the testimony of Dr. S. C. Spencer, Dr. W. C. Spencer, and Dr. Donaldson.

We recognize the fact that this court has construed section 3695, Code of 1906, in several cases, but the first point we raise here is not in conflict with any of the cases in which this court has construed said statute. Our first point is that there was a conference of four doctors brought

together to examine plaintiff for the purpose of testifying
in a law suit to be brought, and plaintiff introduced three
out of the four doctors making this joint examination,
thereby opening wide the door as to the actual physical
condition and extent of injury to plaintiff; and yet, de-
fendant was not allowed to introduce the fourth doctor to
give his version of what was discovered and what tran-
spired during said conference and examination of plain-
tiff. No court has ever held that this privilege communica-
tion could not be waived by the plaintiff, every court will
hold that it is subject to waiver, and if there is such a
thing as a waiver, then when plaintiff put on three out of
four doctors, he certainly waived the privilege to close the
mouth of the fourth doctor. The reason of the statute is
immaterial. Whatever reason prompted the enactment of
the statute, it clearly appears that when plaintiff intro-
duced three of the four doctors the reason for secrecy, or
the evil of commercializing knowledge was completely
waived in so far as what was discovered and transpired at
this joint conference was concerned.

To permit plaintiff to exclude the testimony of Dr. S. C.
Spencer, under these circumstances, is condemned by the
court in the case of *Epstein* v. *Penn R. Co.,* 250 Mo. 1; Ann.
cases 1915A at 434.

Now, we are not contending that if plaintiff had declined
to put on any doctors and had thus kept the door closed
that we would have the right to introduce our doctors;
but when the door of secrecy is removed by plaintiff and a
number of doctors allowed to testify, especially when the
examination of all the doctors covered practically the same
period of time, that the court, in the interest of truth and
justice, ought to permit the testimony to go to the jury. Mr.
Wigmore says a waiver is to be predicated not only when
the conduct indicates the plain intention to abandon the
privilege, but also when the conduct (though not evincing
that intention) places the claimant in such a position with
reference to the evidence that it would be unfair and in-
consistent to permit the retention of the privilege. It is

not to be a sword and a shield.    Fourth Wigmore on Evidence, 2388.

Dr. S. C. Spencer's testimony was clearly competent to show that he was present when the settlement was made with plaintiff and that he heard the paper read to plaintiff and saw the plaintiff sign it.    *Blossi* v. *Chicago R. Co.,* 144 Iowa, Ann. Cases 1919A, page 404.    Yet, the whole of Dr. S. C. Spencer's testimony was excluded.    The general rule is that this privilege only extends to information acquired in attending a patient which was necessary to enable him to prescribe or act for the patient and in order to be privileged it must be necessary for the treatment of the patient.    This is held to be the purpose of the statute regardless of the particular wording of the statute.    See Note to the case of *Bordan* v. *McWilliams,* Ann. Cases 1916A page 403.

The court below erred in granting the sixth instruction for plaintiff, as to the last clause therein, to-wit: "And if the jury find from the evidence that the defendant was reckless or wantonly negligent, they may add a further sum by way of punishment of such conduct."

This is a suit against the Federal Government, through its agent, the Director General of Railroads.    The question as to whether or not a party injured by a railroad has a right to sue the railroad corporation instead of the director general of railroads is not involved in this case, and the different positions taken by the different courts of the country on this question is immaterial for the reason that plaintiff in this case has seen fit to base his right for redress against the director general of railroads as agent of the federal government, and is entitled, therefore, to no right which he cannot enforce against the United States government.    It will not be denied, I presume, that this is a suit against the government; and whatever judgment is rendered is to be paid by the United States government as provided by the Transportation Act of 1920 passed by Congress.

This contention is sustained by Justice LURTON in the case of *Louisiana* v. *McAdoo,* 234 U. S. 627, 58 L. Ed. 1506, wherein he said: "That the United States is not named on the record as a party is true. But the question whether it is in legal effect a party to the controversy is not always determined by the fact that it is not named as a party on the record, but by the effect of the judgment or decree which can here be rendered."

The United States supreme court holds that the imposition of punitive damages is not a question of local laws but of general jurisdiction upon which that court will exercise its own judgment, uncontrolled by the decisions of the courts of the several states of the union. *Lake Shore etc.* v. *Prentice,* 147 U. S. 104, 37 L. Ed. 97.

The supreme court of the United States further holds that the United States has not consented to be liable for suits brought in tort for the wrongs done by its officers, though in discharge of their official duties. *Belknap* v. *Schild,* 161 U. S. 10, 40 Law Ed. 599. This same principle is adhered to by Justice HUGHES in the case of *Peabody* v. *United States,* 231 U. S. 530, 58 L. Ed. 351.

We come, then, to consider how far, if any, the doctrine has been modified. We concede that the Act of the Congress of March, 1918, consents for the government to be sued and that, too, for the torts of its officers. This right conferred by the Congress, however, cannot be extended beyond its plain provisions, and can only be applied to the natural objects sought to be accomplished by the act. When we consider that the United States government has never consented to have punitive damages imposed against it, it necessarily follows that this right would have to be founded upon express consent of the government. There is nothing in the Act of Congress of March, 1918, conferring the right to impose punitive damages against the government, either expressly or impliedly. The Congress in the passing of this act provided for actual damages, but this by no sort of reasoning can be held to imply that the act authorized the infliction of punishment upon the govern-

ment.   The uniform holding of the United States supreme
court that the government would not be liable for actual
or punitive damages for the torts of its agents cannot be
held to have been overlooked by implication.   The right to
recover actual damages and punitive damages is based
upon entirely different considerations; the one for compen-
sation for wrong done; the other as a punishment for the
benefit of the public, and not for the purpose of enriching
or rewardng the injured individual.   This proposition
needs no citation of authorities to sustain it but if any
should be desired we refer to the following: *Y. & M. V.* v.
*Hardie,* 100 Miss. 132, 55 So. 967; *Cumberland Tel. Co.* v.
*Baker,* 86 Miss. 486; *Y. & M. V.* v. *Williams,* 87 Miss. 344.

When we take into consideration that the government
is, after all, the public, it is unthinkable that the public
would provide for the punishment of itself.   When we look
at it from the standpoint that the government is a sov-
ereign, then it is equally unthinkable that the sovereign
would provide for its own punishment as a deterrent to it-
self.   It is perfectly clear that if the sovereign did propose
to consent to be punished for the acts of its agents, such
consent would have to be clearly expressed.

It is true the Federal Act of March 21, 1918, in section
10 thereof, authorizes suits against the carrier, while under
federal control, whether arising under state or federal
laws or at common law, yet in the same sentence conferring
this right, it is provided that said suits under state law
or at common law are not authorized when said law is in-
consistent with the provision of this act, or any other act
applicable to such federal control, or with any order of
the President; and withheld the right to enforce a judgment
by levying against any property under such federal control.
What effect does the phrase "or with any order of the
President," have?   In order to get at its true meaning,
it will be well to note that under the Act of Congress of
August, 1916, the President, on December 26, 1917 issued
his proclamation taking possession of the railroad system
of the country, and proceeded in said proclamation to pro-

vide that said possession, control and operation should be exercised by and through W. G. McAdoo, as Director General of Railroads, and said proclamation gave said Director supreme authority, frequently using the expression, "until and except so far as said Director shall, from time to time, by general or special orders, otherwise provide," and the Congress in passing the Act of March 21, 1918, had before it this proclamation in which the supreme power was conferred upon the Director General, and in recognition thereof provided right along with the power to sue the carrier, that this right to sue must not be inconsistent with any order of the President, thereby expressed enactment conferring this power upon the President to make general orders. Therefore, in order to make it perfectly clear that the government had not conferred the right to bring suits against it for punitive damages, General Order No. 50 was issued prohibiting suits against the Director General for fines, forfeitures and penalties.

We contend that it was not net necessary for this publication clause to be inserted in said general order No. 50 in order to protect the government against suits for punitive dameges, but this phrase was evidently inserted in said order to put at rest any contention upon the subject and to prevent the bringing of suits for penalities and fines, and thus put it beyond debate.

"Punitive damages" is simply another name for penalties, in the 22nd A. & E. of Law, page 654. "Penalties" is defined as follows: "but they are also commonly used as including any extraordinary liability to which the law subjects the wrongdoer in favor of the person wronged not limited to the damages suffered."

Exemplary damages and penalties are considered by this court as synonymous terms, as shown in the case of *Y. & M. V.* v. *May,* 104 Miss. 422, wherein the court in speaking of the duty of the jury says: "They hear the testimony and if the case be one which legally warrants the infliction of exemplary damages, they, in the exercise of

their unrestrained discretion decide whether they will impose any penalty."

It is clear that General Order No. 50 prohibits suits against the Director General for punitive damages, the different lower courts divided in their opinion as to whether or not General Order No. 50 was a proper exercise of power conferred upon the President by Congress. Division A of this court has not committed itself to the doctrine that said General Order No. 50 is void.

The case of *M. & O. R. R.* v. *Jobe,* 84 So. 910, was a case in which the railroad was sued for the statutory penalty for not keeping up a farm crossing. The railroad defended on the ground that its property was under control of the Director General and the crossing removed by his employees and therefore the railroad was not liable. The contention of Mrs. Jobe was that General Order No. 50 prohibited suits against the Director General for penalties and therefore her only remedy was against the railroad. The court held the railroad liable, seemingly upon the sole reason that suits could not be brought against the Director General for penalites. Chief Jusitce SMITH and Justice SYKES concurred upon the fact that General Order No. 50 prohibited suits against the Director General for fines, penalties and forfeitures, and declined to express an opinion as to whether or not General Order No. 50 is in conflict with the Federal Control Act and therefore void.

In *Hines* v. *Taylor,* 48 So. 381 (Fla.), it was held that suits growing out of the operation of railroads by the government under federal control were in effect against the United States, and that penalties could not be recovered in such suits. The supreme court of South Carolina holds that Orders No. 50 and 50A were controlling and that under said orders punitive damages were not recoverable against the government. *Jackson-Tween Lumber Co.* v. *Southern R. R. Co.,* 101 S. E. 924; *Powell* v. *Hines, Director Gen. of R. R.,* 103 S. E. 545. In this case the court held that the Director General could not be sued for wilfulness. *Ginn* v. *United States Railroad Administration,* 103 S. E. 548.

The Director General had authority to issue general Order No. 50 from the Act of Congress of March 21, 1918, in the 9th section of said act, as follows: "And the President, in addition to the powers conferred by this act, shall have, and is hereby given such other and further powers necessary or appropriate to give effect to the powers herein and heretofore conferred; and by the 10th section of said act, wherein it provides that no suits shall be brought based upon any law which may be inconsistent with the provisions of this act, or any other act applicable to such federal control, or with any order of the President.

Some of the lower courts have held that if it be true that the Act of Congress gave the power to the President to pass said General Order No. 50, the act of Congress would be an unconstitutional delegation of legislative power. As a complete answer to this contention, we cite the court to the following authorities: *Ellis* v. *B. & A. R. Co.,* 270 Fed. 279.

Selective Draft Law Case, 245 U. S. 366, and the numerous authorities referred to in said case.

We were entitled to have this case go to the jury on the measure of damages under correct instruction as to the measure of damages, and ought not to be called upon to assume the burden of any close calculation to demonstrate that no punitive damages was allowed in the verdict.

The court erred in granting the first instruction to plaintiff, in which instruction he gave plaintiff the benefit of the Mississippi *prima-facie* statute 1985, Code of 1906.

This suit is against the Director General, based on the Federal Act of March, 21, 1918 and section 206 of the Transportation Act, of 1920, of the Congress, and it is by virtue of these federal statutes alone that plaintiff has a right to maintain this suit. It is a simple action for negligence under the common law as authorized by the Federal Act, and therefore governed by the same principle that controls where the suit is brought under the Federal Employers' Liability Act; that is to say, this suit is brought under the above two acts of Congress, and appli-

cable principles of common law as interpreted and applied in Federal courts, and in that case negligence is essential to recovery. *N. O. & N. E. R. R. Co.* v. *Harris,* 247 U. S. 367, 62 L. Ed. 1167.

This Harris case further decided that the question of the burden of proof is a matter of substance and not subject to control by laws of the several states and that the Mississippi *prima-facie* statute did not apply to a suit under the Federal Employer's Liability Act.

We contend that this suit is just as much a suit based upon negligence under Federal statutes as is a suit under the Federal Employers' Liability Act; and that this *prima-facie* statute is inapplicable in both cases.

*George T. Mitchell* and *C. R. Bolton,* for appellee.

On the proposition that the *prima-facie* statute of Mississippi, section 1906, is in violation of the fourteenth Amendment of the Constitution of the United States, we shall content ourselves with citing the case of *M. J. & K. C. R. R.* v. *Turnipseed,* 55 L. Ed. 78. In that case the supreme court of the United States, in passing on this very statute, specifically held that neither the equal protection of the laws nor due process of law was denied by it. This seems to us conclusive on this question. As to the instruction itself, we say: First, there is no error in the instruction. Appellant undertakes to find error in the instruction by taking only certain clauses from it, when it should be considered as a whole. In order to keep it clearly in mind, we are here setting it out in full.

The court charges the jury that under the law proof of injury inflicted by the running of trains is *prima-facie* evidence of want of reasonable skill and care on the part of the servants of the defendant with reference to such injury and this presumption of negligence on the part of defendant's servants remains and controls in the case until the facts and circumstances with reference to the injury have been satisfactorily proven to the jury, and if you are satisfied by

a preponderance of the evidence that the plaintiff was in-
jured by the running of a train of defendant, but are in
doubt as to the facts and circumstances attending the in-
jury, the defendant will be presumed to have been guilty
of negligence and you will find for the plaintiff.

Could there be any fairer statement of the law than that?
It is simply a statement of the general law of presumption
and the same principles set forth in this instruction could
be applied as to any presumptions. It simply says that
from the proof of certain facts a certain presumption arises
and that presumption which the law creates remains and
controls until the true facts have been established; the
facts and circumstances to which the presumption will
yield may be established either by the evidence of the de-
fendant or of the plaintiff or of both taken together. But
regardless of by whose evidence they are proven, it is un-
doubtedly the law that that presumption remains and con-
trols until those facts and circumstances have been estab-
lished.

Our contention as to the correctness of this instruction
is supported by the case of *A. & V. R. Co.* v. *Thornhill,* 63
So. on page 679, where we find the following language:
"Where, as in the case at bar, there is a dispute as to the
facts and circumstances under which the injury was in-
flicted, it cannot be said that they are known in the legal
sense until they have been found by the jury, and if the
jury is unable for any reason, to determine from the evi-
dence what the facts and circumstances are, they never
in the legal sense become known and consequently in such
a case the inference of negligence drawn from the infliction
of the injury remains in effect and determines the de-
fendant's liability." The Thornhill case has never been de-
parted from, but has been repeatedly upheld.

In the Daniel case cited by appellant, we find the follow-
ing on page 733 of 66 So.: "In order that the statutory
presumption may be overcome, the facts and circumstances
must not be left to conjecture; the evidence must be of
such character that from it the jury can determine what

these facts and circumstances are, but when they have been determined, the statute has served its purpose and can can no longer be invoked."

This instruction is clearly in accord with these authorities. It retains the presumption in the case only until the facts to which it will yield are established. It says nothing as to the relative strength or weakness of the testimony required of defendant or plaintiff. It imposes no burden upon defendant to show that its testimony is true and that of plaintiff's is untrue. Under this instruction in does not matter which they believe, when the jury determines the facts, whether they show the grossest negligence or the utmost care, the presumption yields to those facts. When it is remembered that the burden of showing the true facts and circumstances is upon the defendant, it cannot be said that he is hurt by this instruction which imposes no burden on him but takes the testimony as a whole.

The court will note that there is a clear distinction between this instruction and those on the *prima-facie* statute that have been held to be error. In each of the instructions which have been heretofore condemned by this court, it is stated that upon the arising of the presumption, the defendant must exculpate itself or must prove such facts as to show that it was free from negligence. No such burden is imposed here. It simply tells the jury when the presumption arises, that it yields to facts and that if the facts are not established, it remains. This instruction is certainly different from those requiring the defendant not to simply show facts, but to exonerate itself.

The giving of the instruction was not error because the court held in the *Thornhill Case, supra,* and has since reaffirmed in other cases, that the instruction may propertly be given even if the facts be certainly established.

We therefore say that the instruction is not erroneous and any objections made to it are hypercritical and far above the consideration of an ordinary jury. It is a simple announcement of the general law of presumption. If the

51

presumption as created by the statute is to mean anything at all, this instruction is not erroneous.

Second, even if this instruction were technically incorrect, it still is not error for the reason that the burden imposed by the statute was not met by the defendant. In the *Thornhill case, supra,* it is said: "This *prima-facie* presumption, however, is not a specific but a general one; that is, negligence is presumed in the doing or omission of any act that could have reasonably caused the injury, and consequently, in order that it may be rebutted, the evidence must disclose the doing or omission of every act from the doing or omission of which an inference of negligence *vel non,* could be drawn."

Section 4045, Code 1906, provides that at a distance of at least three hundred yards before crossing a highway "the bell shall be kept ringing or the whistle shall be kept blowing until the engine has stopped or crossed the highway or street." There is a conflict in the testimony as to whether the engineer blew for the crossing some distance below the depot but there is no evidence whatever from the engine or fireman or any one else that the bell was ringing or the whistle blowing when the engine passed over the crossing. All there was on this point was testimony offered by the plaintiff that it was not ringing or blowing. We therefore think the case of *A. & G. S. R. Co.* v. *Carney et al.,* 68 So. 166, is very much in point. In that case the contention was over the *prima-facie* statute. The court said:

"It appears from the evidence that section 4045, Code 1906, was entirely ignored by the employees of the railroad company in charge of the train, in that the whistle was not blown or the bell rung continuously from the time the locomotive reached a point three hundred yards from the crossing until the locomotive had passed over the highway. There was a violation of the plain mandate of the law and it follows that the burden of the statute was not met." It seems to us that the same might equally as well be said in this case.

Third, even if the instruction were erroneous it was harmless. The only effect of the instruction was to establish liability. It had nothing whatever to do with the degree of liability or the concurrent negligence feature of the case, which was set out in another instruction. Liability is so clearly shown in the case that no harm could come from the instruction, even if it were error. It is undenied that section 4045, Code 1906, requiring the whistle or bell to be sounded, was being violated. It is admitted by everybody that the six-mile statute was being violated, the train running from fifteen to thirty-five miles an hour. Where negligence is clearly shown, an instruction even though erroneous, tending to establish negligence by presumption, could do no harm. This court has affirmed several cases where the liability was shown, though there was an instruction under the *prima-facie* statute which was subject to criticism. In some of them the instruction even went so far as to require the defendant to exculpate itself. We are sure the court is familiar with them and shall therefore not consume further time of the court by citing them.

We therefore again submit that there were no errors below, that the judgment of the lower court is manifestly correct and the case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was plaintiff below and brought suit against the appellant for damages for a personal injury inflicted by the operation of a locomotive of the appellant in the municipality of Shannon, in Lee county, Miss. The proof for the plaintiff showed that he was approaching a crossing in the said municipality at the time he was injured, and that there was no sounding of a whistle or ringing of a bell to give warning of the approach of the locomotive and train of cars; that there was a platform on the side of the railroad track loaded with cotton which obstructed his view so he could not see the approaching train, and as he drove on the track of the railroad the train came upon him

at a high rate of speed, running at approximately thirty-five miles per hour, and that his team and wagon were struck and he was violently thrown a distance of forty-five feet, and as a result of the said fall plaintiff suffered concussion of the brain and injuries to his back, neck and head.

The proof for defendant showed that the train approach-ed said crossing from the south, and that the whistle for the crossing was sounded twice, and that the train was running at the rate of fifteen miles per hour; that the engineer did not see the plaintiff until he drove upon the track, and he then did all he could to check his train by applying the emergency brakes and doing all in his power to stop the train, but that the engine struck the mules, broke the tongue from the wagon, carried the mules some four hundred feet from the place where they were struck, and that the plaintiff was thrown from the wagon a distance of forty-five feet. There was also proof that other parties near the scene of the accident tried to attract the attention of the plaintiff and warn him of the approach of the train, but were unsuccessful in attracting his attention. The testimony does not show that the bell was rung and kept continuously ringing for the distance required by statute on approaching crossings. Section 4045, Code of 1906 (section 6669, Hemingway's Code).

When the plaintiff was injured he was placed in the custody and under the treatment of Dr. Spencer, a physician employed by the railroad company, who treated him for his injuries. This injury occurred on the 13th day of November, 1919, and about three or four days thereafter the claim agent of the railroad company went to the home of the plaintiff and procured a release for the sum of forty-five dollars. When the release was procured there were present Dr. Spencer, the claim agent, the plaintiff, and the plaintiff's wife, and their testimony is in direct conflict as to the condition of the plaintiff at that time and as to the facts concerning the signing of the release. The plaintiff testified that he was wholly unconscious and had no knowl-

edge at all of signing such release. The plaintiff's wife testified that he was unconscious, and that she protested that her husband was not in any condition to discuss the matter. The claim agent and Dr. Spencer testified that plaintiff was rational, but was complaining and suffering to some extent. The release was pleaded in bar of the action and replication to this plea set up the facts as to plaintiff's condition as above set forth.

On the 19th day of November, following the injury, another physician was called, who, in company with Dr. Spencer, examined the plaintiff, and on the following day three other physicians were in consultation with Dr. Spencer and made an examination of the plaintiff, and three of these physicians were placed on the stand by the plaintiff and testified that the plaintiff was suffering from brain concussion, and that it was impossible to tell the extent of the injury, or whether it would be permanent of not. They testified that the plaintiff was unable to reason, that he was in a comatose condition and incapable of connected conversation, but that on being aroused he would answer a question and recognize a person, but would almost immediately relapse into his comatose state.

Dr. Spencer was offered as a witness by the defendant both as to the plaintiff's condition at the time of the signing of the release and at the time he was examined by the other physicians. Dr. Spencer's father, who was also a physician, at the request of Dr. Spencer attended the plaintiff and was present when some of the examinations were made. Both Dr. Spencer and his father were offered by the defendant to contradict the statements made by the plaintiff's physician, and on objection by the plaintiff they were excluded, which constitutes one of the assignments of error in this case.

There was a judgment for the plaintiff for five thousand dollars from which judgment this appeal was prosecuted.

The first assignment of error is that the verdict is contrary to the law and the evidence; and the second that the verdict is excessive and the result of passion and prejudice.

Under these assignments of error it is first argued that it was wrong to submit the case to the jury because the release was valid and binding, and *Railway Co.* v. *Turnbull,* 71 Miss. 1029, 16 So. 346, is relied on to support this contention. The appellee relies upon *Jones* v. *Railway Co.,* 72 Miss. 22, 16 So. 379, the *Chiles Case,* 86 Miss. 361, 38 So. 498, and the *Ault Case,* 101 Miss. 341, 58 So. 102. The court was warranted in submitting this question to the jury, and the law was correctly given the jury, and its verdict upon the question is conclusive.

It is also contended that the plaintiff's gross negligence was the sole cause of the injury; that he deliberately drove upon the railroad track without looking, stopping, and listening to ascertain if there was danger in crossing the tracks. Under our joint negligence statute, if the railroad company was guilty of negligence in its operations, the negligence of the plaintiff would not defeat the action, but would merely go in reduction of the damages, and instructions along this line were submitted to the jury. The plaintiff testified that he would have heard the whistle had it been blown, and so does the witness Mr. Davis, and other witnesses for the plaintiff. This presented a conflict as to whether or not the whistle was blown at all, and presented for the jury the question as to whether the whistle was blown and the bell rung in accordance with section 4045, Code of 1906 (section 6669, Hemingway's Code), which reads as follows:

"Every railroad company shall cause each locomotive engine run by it to be provided with a bell of at least thirty pounds weight, or a steam whistle which can be heard distinctly at a distance of three hundred yards, and shall cause the bell to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway or street; and the bell shall be kept ringing, or the whistle shall be kept blowing, until the engine has stopped or crosses the highway or street."

So we think this contention is not well taken on this appeal.

It is argued next that the verdict is excessive and the result of passion and prejudice. In support of this argument it is contended that punitive damages were not allowable in this case because the railroad company was being operated by the United States government, and that punitive damages could not be inflicted against the government, and that punitive damages constitute a penalty in the meaning of that term as used in General Order No. 50 issued by the Director General directing suits, with certain exceptions, among which are actions for penalties, to be brought against the Director General, and not against the railroad company, and it is argued that, as punitive damages constitute a penalty, it falls within the exception, and the Director General cannot be sued. It is also argued that the reasons for allowing punitive damages are for the protection of society, and not for the benefit of the plaintiff, and that it is inconceivable that punitive damages be inflicted against the government.

If punitive damages are permissable, the verdict must be upheld as against this attack. The question turns upon the construction of the provisions of the Federal Control Act of August 29, 1916 (39 Stat. 619), and Act March 21, 1918 (U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919, sections 3115 3-4a-3115 3-4p), with reference to government operation of railroads. We considered the effect of this statute in the case of *Dantzler Lumber Co.* v. *T. & P. Ry. Co.,* 119 Miss, 328, 80 So. 770, 4 A. L. R. 1669, and reached the conclusion that this act of March 21, 1918 (section 3115 3-4j, U. S. Compiled Statutes 1918, Compact Edition, p. 458), authorized suits to be conducted and rights of action to lie as before the passage of the act, with the exception provided in the act as to the movements of transports, munitions of war, etc., in all respects as theretofore had been provided.

It is expressly provided in this act of March 21, 1918, that nothing in this act shall be construed to amend, repeal,

impair, or affect existing laws or powers of the states in relation to taxation or lawful police regulations of the several states, except wherein such laws, powers, or regulations may affect the transportation of troops, war materials, government supplies, or the issue of stocks and bonds. In that case we said:

"It will be noted from the sections above quoted of the act of March 21, 1918, that while under federal control the carriers shall be subject to all laws and liabilities as common carriers whether arising under state or federal laws or at common law, except so far as may be inconsistent with the provisions of this act, or with any order of the President, and that actions may be brought against such carriers and judgment rendered as now provided by law. . . . It is clear from this section that it was not the purpose of Congress in enacting these laws to displace the state control any further than was necessary to enable the government to carry on war activities, transporting the troops, war materials, government supplies, and issuance of bonds. In all other respects it was the intent of Congress to leave the laws of the state in full force."

We do not think the "penalties" or penal actions, excepted in General Order No. 50, embrace punitive damages in a suit against carriers for wrongs committed, or for negligence in not performing duties that ought to be performed. The penal actions contemplated in that proclamation are such that a separate suit could be brought therefor. No separate suit could be brought for punitive damages, but they are allowed to be recovered by plaintiff for a willful violation of his rights, or for a willful violation of a duty owed to him, not strictly as compensation for his injuries; but nevertheless as a remuneration for the willful violation of his rights, or for gross and wanton neglect of duties due him by the company. Where the statute allows punitive damages to be inflicted, the jury is ordinarily a judge of the amount, and, applying the rule to the facts in this case, we cannot see where this is excessive in the light of the right of the jury to inflict punitive damages

and in the light of the instruction of the court on this subject.

It is next contended that the court erred in excluding the evidence of the physicians offered by the defendant. It is argued that section 3695, Code of 1906 (section 6380, Hemingway's Code), does not apply to the present case, because the examination was a joint examination by all of the physicians at which all were present, and, plaintiff having introduced some of the physicians, that the defendant had a right to introduce the other physicians to contradict their evidence, and that the plaintiff waived the privilege offered by statute when he placed some of the physicians on the stand.

We think the court has foreclosed this contention in its former decisions. *Railroad* v. *Messina,* 109 Miss. 143, 67 So. 963; *Newton Oil Co.* v. *Spencer,* 116 Miss. 568, 77 So. 605; *U. S. F. & G. Co.* v. *Hood,* 87 Só. 115. In this last case the physician whose testimony was excluded was also present when another physician who testified examined the injured party, and it is precisely in point in the case before us.

It is contended in the next place that the court erred in granting the plaintiff an instruction on the *prima-facie* statute. Section 1985, Code of 1906 (section 1645, Hemingway's Code). This instruction reads as follows:

"The court charges the jury that under the law proof of injury inflicted by the running of trains is *prima-facie* evidence of the want of reasonable skill and care on the part of the servants of the defendants with reference to such injury, and this presumption of negligence on the part of defendant's servants remains and controls in the case until the facts and circumstances with reference to the injury have been *satisfactorily* proven to the jury, and if you are satisfied by a preponderance of the evidence that the plaintiff was injured by the running of a train of defendant, *but are in doubt as to the facts and circumstances attending the injury,* the defendant will be presumed to have

been guilty of negligence and you will find for the plaintiff." (Italics ours.)

The instruction as given does not correctly announce the law. The effect of the statute was fully discussed and the authorities reviewed and reconciled in this state in the case of *A. & V. Ry. Co.* v. *Thornhill*, 106 Miss. 387, 63 So. 674, and quoted with approval in *I. C. R. R. Co.* v. *Gray*, 118 Miss. 612, 79 So. 812.

As was said in *A. G. S. R. R. Co.* v. *Daniell*, 108 Miss. 358, 66 So. 730, when the facts are fully disclosed by the evidence, the question is to be determined by the evidence, and not by the presumption of the statute. The instruction, however, does not constitute reversible error in this case for the reason that on the railroad company's own evidence it was negligent in that it was running through a municipal corporation at a greater rate of speed than permitted by law. Section 3546, Code of 1892 (section 4043, Code of 1906; section 6667, Hemingway's Code). Section 4043, Code of 1906 (section 6667, Hemingway's Code), limits the rate of speed to six miles an hour and no more, and provides that the railroad company shall be liable for any damages or injury which may be sustained by any one from such locomotives or cars while they are running at a greater rate of speed than six miles an hour through any city, town, or village.

We think the evidence also shows beyond dispute that there was a failure on the part of the railroad company to comply with section 4045, Code of 1906 (section 6669, Hemingway's Code), which requires that the bell shall be kept ringing or the whistle shall be kept blowing until the engine has stopped or crossed the highway or street. These two statutes impose liability in the present case, and the giving of the instruction above mentioned would be harmless in the present case because the railroad company is liable on the undisputed evidence.

The judgment will therefore be affirmed.

*Affirmed.*

OPINION ON SUGGESTION OF ERROR.

ETHRIDGE, J.

In the former opinion handed down by this court on June 6, 1921, 88 So. 630, we held that punitive damages were recoverable against the government operating the railroad through a director general, and that consequently it was not error to give a charge to the jury authorizing the infliction of punitive damages in the case before us.

On suggestion of error our attention has been called to the decision in the case of *Missouri Pacific Railroad Co. and Walker D. Hines, Director General of Railroads*, v. *Ault*, 255 U. S.—, 41 Sup. Ct. 593, 65 L. Ed. —, decided by the United States supreme court on June 1, 1921, which decision was not before us when we reached our former conclusion. A careful consideration of this decision by the United States supreme court, which is the court of final authority on this question, convinces us that we were in error, and that punitive damages may not be recovered against the government or the Director General. See *Missouri Pacific R. Co. etc.*, v. *Ault*, 255 U. S. —, 41 Sup. Ct. 593, 65 L. Ed. —.

This construction by the United States supreme court in this opinion is practically conceded by the appellee, but the appellee insists that the giving of the instruction on punitive damages was harmless error, because the amount recovered was not more than fair compensation for the injury inflicted, and that under rule 11 of this court (72 So. vii) we should affirm the judgment.

We are unable to concur in this view. While the amount recovered might be upheld in the absence of an instruction for punitive damages, we cannot say with confidence that the jury would have rendered a verdict for this amount. Taking all of the facts together as shown in the record, we think the instruction on punitive damages contributed to the amount of the verdict, and that it would be fair to all parties to allow the damages assessed to be made under

correct instructions upon that subject. On a new trial the jury may consider the negligence of the plaintiff, if any, along with the negligence of the defendant in determining the amount of damages. In all other respects the original opinion is adhered to.

The suggestion of error will be sustained, and the case remanded for a new trial as to damages alone; the judgment being affirmed as to liability.

*Sustained*