## KING-SPARROW LUMBER CO. *v.* STEWART.

[95 South. 833. No. 23215.]

ANIMALS. *Bailee of mule held not insurer.*

> Where plaintiff turned his mule over to defendant, and authorized defendant to use it in hauling lumber, in order to determine whether he would buy it, defendant was not an insurer, but a mere bailee for benefit of both parties, and not liable for mule's death without his negligence.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by E. S. Stewart against the King-Sparrow Lumber Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

*T. C. Hannah* and *A. A. Hearsh,* for appellants.

The law is certainly well settled that a bailee in cases where the bailment is for the reciprocal benefit and mutual profit of both the bailor and bailee, then the bailee is required to exercise only ordinary care. This rule is stated and supported by the following authorities, as well as by

many others. In fact we do not believe there is any authority anywhere to the contrary: 5 Cyc., p. 184 (ii); *Berting* v. *Norman,* 101 Ark. 75, 141 S. W. 201; *Cowles & McSwayne* v. *Pointer,* 26 Miss. 254; *Archer* v. *Sinclaire,* 49 Miss. 343; *Nethery* v. *Belden,* 6 So. 464; *Y. & M. V. R. R. Co.* v. *Hughes,* 47 So. 662; *Gulf & C. Ry. Co.* v. *Ferguson,* 52 So. 797.

These cases hold clearly that the appellants in this case were required to exercise only ordinary care in caring for the mule, and it follows of course that they are not liable until it is shown that they were negligent in that they did not exercise ordinary care.

*W. C. Batson,* for appellee.

The entire brief of appellant is taken up on the theory that this was a bailment for mutual profit, and that the bailee in such case is required to exercise only ordinary care. If we agreed on the state of facts then there would be no contention as to the application of the law. But from the standpoint of appellant, the law is well stated in the case of *Chastek* v. *Albertson,* 191 Pac. 371. In discussing the degree of care required under the circumstances, Judge JAMES said:

"Appellants contend that the bailment was gratuitous; hence that a slight degree of care only was required of them; and that the evidence did not show that they were guilty of gross negligence. The court determined that the bailment was for the mutual benefit of Chastek and defendants, and hence ordinary care was required to be exercised by the latter in protecting Chastek's property. We agree that this conclusion was the correct one to be drawn. The defendants received the automobile of Chastek in the course of the negotiation for a machine which they desired to sell to Chastek, and that they would be benefited by the transaction was only contingent upon an amount being agreed upon as a credit to be allowed Chastek which would be satisfactory to both sides.

We think that the court was justified in concluding that ordinary care was not used for the protection of Chastek's automobile while it was in possession of the defendants. The machine was equipped with a lock, as to the operation of which Hoover, one of the defendants and the man who took charge of the machine, appeared to be familiar. Chastek delivered the key of the lock to Hoover, and when he turned the machine over in front of the place of business of the defendants the lock was fastened. Hoover took the automobile into the business section of a large city, left it unattended and unlocked, and it was stolen. With very simple means at hand by which the machine could have been made more secure in the place where he left it, Hoover omitted altogether to make use of this means. It would seem to be clear beyond question that such act of his by no means satisfied the requirement of ordinary care.

For argument's sake if we adopt the contention of appellant that he had any right whatever to use the mule of appellee for the purpose of hauling lumber, did not he fail to use the rule of ordinary care laid down in the above case because the appellant, W. H. Sparrow, himself, states that he learned the very first day that he had the mule of appellee that it was not satisfactory as shown by his testimony at top of page 24 of the record, and at the bottom of page 28 of the record, and following especially on page 29. It was therefore, his duty when he first discovered this mule was not satisfactory, to return her to the owner, or at least to have left her out of his teams and in his lot for appellee to receive.

Again on the contention of appellant, let's analyze the proposition as to whether or not he used even ordinary care after getting possession of the mule belonging to appellee, Mr. Sparrow, defendant, says at the bottom of page 23 of the record, that the first afternoon he worked this mule, that he himself rode on the wagon behind the mule back to the mill, and remarked to his driver about some irregularity about the walk of the mule, and he didn't think

she would be satisfactory. And on bottom of page 28 of the record he says this mule was evidently not sound from her walk. In view of this fact and the statement of Garner Pearce, a servant, and one of their chief witnesses, who on page 52 of the record, at the bottom states, "I began to notice it but could not tell but wanted to try her out—the way she was walking could have been due not being used to work and being without shoes." Now let's apply to these statements the rule of law on page 97 of Volume 3, R. C. L. as follows: "Ordinary care means such care as ordinary prudent men, as a class, would exercise in caring for their own property in like circumstances."

And I refer to footnote 5, for the law to substantiate this rule. Then did the appellant use ordinary care in continuing to work an unused soft mule, which fact was known to him, and his servant, or that had some defect that would cause the mule not to be satisfactory for his purpose, on an extremely hot day on the 16th day of September, 1920.

Even though the consent of the bailor had not been obtained to use this mule for hauling lumber in the manner it was, it might be generally stated as a rule of law that: "If the use would benefit the property, the assent of the owner would generally be presumed, but not so if the use would be injurious or perilous."

Holden, J., delivered the opinion of the court.

This is an appeal by the King-Sparrow Lumber Company from a judgment of the circuit court in favor of appellee, Stewart, for the value of a mule owned by him, which died while in the possession of the appellant. The case is briefly this:

The lumber company owned a sawmill and used mule teams in hauling lumber from the mill to the railroad for shipment. They kept their mules in a lot and barn at their mill. Appellee, Stewart, who lived close to the mill, owned a mule which he desired to sell to appellant, to be used in their teams for hauling purposes. The lumber company

negotiated with Stewart for the purchase of his mule, but insisted on trying the mule out to see whether she would work in a team with another mule in hauling the lumber wagons, with the understanding that, if the mule was satisfactory, appellant would probably purchase her from Stewart. Stewart brought the mule to the lot of appellant, and left her there to be tried out in the hauling of lumber; and appellant used the mule for about two days, with the view of determining whether the animal was suitable for hauling purposes.

While driving the mule in harness with another mule, hauling an average load of lumber from one point to another, she became sick and died. It appears nowhere in this record that the mule was overdriven, abused, or otherwise mistreated in the use of her by appellant. It is not shown what caused her death, beyond the fact that she became hot and was perspiring freely, in hot weather, and suddenly laid down in the road, and died shortly afterwards. The appellant lumber company made every reasonable effort to save the mule after she was down, by sending for a veterinary surgeon, and by employing other means at hand, such as pouring water on the animal's head and administering medicine to her, all of which proved unavailing. The testimony of the driver of the mule, and others, was to the effect that the mule was being used and handled with reasonable care, and that the condition of sickness did not result from any improper or negligent use of the animal in hauling the lumber at the time she became sick.

The appellant contends that under the undisputed proof in the case there is no liability, because the death of the mule did not result from any negligence of appellant, but that the death was due to natural causes over which appellant had no control, and it is urged that the lower court erred in not granting the peremptory instruction asked by defendant below. The opposite contention of appellee is that appellant is liable, on the ground that at

the time the mule died she was being used by appellant for a purpose not authorized by appellee.

We have read the record carefully and are unable to find any positive substantial evidence to support the contention of the appellee. The record conclusively shows that appellee left the mule with appellant for the purpose of being worked to a lumber wagon, so that appellant could determine whether she was a suitable mule for hauling purposes before he would buy her. Appellee took the mule to the lot of appellant, left her there, and authorized the trial use, and at no time objected to hauling the lumber with her. Therefore the unfortunate loss cannot be charged against the appellant, because the death of the animal was not due to the negligence of appellant, as it is shown beyond contradiction that it was using the mule with ordinary care, such as it should have exercised with its own property, at the time she became sick and died.

It is a case of hardship on the owner of the mule; nevertheless, under the law, the appellant is not liable for the loss, since it was not an insurer, but a mere bailee for the benefit of both parties.

Reversed, and judgment here for appellant.

*Reversed.*