DeLAUGHTER, A MINOR, ETC. *v.* WOMACK, et al.

No. 43082 June 1, 1964 164 So. 2d 762

*Abe A. Rotwein, Thomas H. Watkins,* Jackson, for appellants.

*Daniel, Coker & Horton, Melvin B. Bishop,* Jackson, for appellees.

RODGERS, J.

This is a damage suit for personal injuries alleged to have been caused to the appellant as the result of a negligently injected dose of penicillin administered by a nurse employed by doctors named in the pleading, (appellees here), and the negligent failure to promptly treat the injury caused by the injection. The facts were submitted to a jury resulting in a verdict in favor of the defendants. The court overruled the motion for a new trial and entered a judgment for defendants; whereupon, plaintiff appealed to this Court.

The appellant has submitted many assignments of error, but since we have reached the conclusion that this case must be retried, we shall discuss only those we deem necessary as a guide.

Appellant and appellees vigorously insist that their respective sides should have been granted a directed verdict in the trial court upon the facts and application of the law to the facts shown. We must therefore give a synopsis of the evidence and circumstances here involved.

This is one of those sad cases growing out of an unfortunate occurrence which is certain to arouse sympathy for both sides. The injury to the appellant came about under the following circumstances:

Michael Roy DeLaughter, a boy, four years old, had been a patient of appellee-doctors since his birth. On January 19, 1961, he complained of discomfort in his ear. His Grandmother, Mrs. Roy DeLaughter, Sr., took him to the office of appellees, where he was examined by Dr. Noel C. Womack, Jr. The doctor directed appellee, Mrs. Margaret W. Sheffield, a registered nurse in his employ, to give the child an injection of penicillin. The nurse gave an injection of Flo-cillin in the left buttock. The child cried, and complained of pain immediately, and in a short time complained of pain in his left leg and foot. His leg and foot became cold. The child's Mother, Mrs. Roy DeLaughter, Jr., noticed blood at the site of the injection and she became alarmed, and at 6 P. M., she reported the child's condition to Dr. Womack by telephone. A prescription was sent from the drug store at the instance of Dr. Womack but at 6:30 the child had apparently gotten worse and the doctor was again advised of his condition. Dr. Womack directed the mother to bring the child to the emergency room at the Baptist Hospital, where he again made an examination of the child. The doctor advised the mother that the child was suffering from a mild reaction to the penicillin injection and prescribed the use of paregoric to lessen his pain, and directed that hot packs be used and that the child's foot be elevated.

Thereafter, apparently the child's condition did not improve so that it was again taken to the office of the appellee-doctors on Friday, January 20, 1961, where, in the absence of Dr. Womack, it was examined by Drs. Ward, Hendrick and Conner. It was discovered that the child's toes were turning blue. Appellant's testimony shows that the doctors were not in accord as to their diagnosis of the child's illness. They directed the mother to continue the medication given by Dr. Womack, including the use of hot and cold packs, and to elevate his left leg. The child continued to suffer, and was

again taken to the office of appellees on January 21, 1961, where it was again examined by Drs. Ward, Womack and Hendrick. The mother was then directed to put the child in the Baptist Hospital. Dr. Thomas J. Saffley, a surgeon was called into consultation and he called Dr. Thomas Marland to give an injection to block the nerve so as to stimulate blood circulation. On February 14, 1961, the first of four operations was performed on the child to amputate the child's toes and to remove the dead tissue and graft skin to cover the wound. On March 18, 1961, another operation was performed to remove the child's foot from the skin graft on its right leg. Two other operations were necessary to complete the skin grafting process.

The appellant offered evidence to show that the appellant-minor had been given many injections of penicillin before January 19, 1961, without adverse reaction or untoward incident; that the gluteal area in the left buttock where the injection was administered contained the superior gluteal artery; that to inject sesame oil and penicillin in an artery would cause an embolism, or clot in the blood vessels; that there was a known method of determining whether the injection of the needle had penetrated a blood vessel, by simply withdrawing the hypodermic plunger so as to determine whether or not blood would come into the syringe; that when the blood supply is blocked by an embolus certain conditions develop, and that these conditions were observed by Dr. Womack on the person of appellant, that he recognized there was a "circulatory embarrassment in the left lower extremity;" that when a blood vessel is blocked an emergency exists, which will cause gangrene within eight hours unless prompt action is taken to dilate the blood vessels; that there are certain well-known medical methods and medicines known to the medical profession, including the defendant-doctors, which should have been used to relieve the congested area; that al-

though Dr. Womack recognized the "circulatory embarrassment", he failed to administer the known remedy. Moreover, after the operations on the appellant, Dr. Womack admitted, in writing over his signature, that the child developed gangrene of the toes and this condition was due to intra-arterial injection of penicillin in oil. It is alleged that as a result of the negligence of the nurse, Mrs. Sheffield, in giving the injection into the artery, and the negligence of the doctor-defendants in failing to administer a known remedy, the appellant was required to undergo suffering, pain, surgery and permanent injury.

The defendants introduced evidence to show that the nurse, Mrs. Sheffield, was competent; that the injection was not administered in the gluteal artery; that the child's condition was brought about because of his peculiar reaction to the penicillin injection; that the treatment administered was proper under the diagnosis of sensitivity and allergy; that circulatory embarrassment was not of a sufficient degree to require the treatment for total embolism; that the blocking of the blood vessel in the gluteal region by an intra-arterial injection was such a rare occurrence as not to be within the foreseeable danger required under the law to charge the defendants with negligence; that the written statement of Dr. Womack, wherein he admitted that the injection was intra-arterial, was an effort on the part of the doctor to aid the parents of Michael DeLaughter to collect their insurance.

I

The appellant contends that he was entitled to a directed verdict of negligence, because, it is said, it is undisputed that appellee gave the appellant an injection of penicillin in oil and that the injection caused the resulting gangrene and amputation of a part of appellant's left foot; that the appellees thereafter, less

than twelve hours later, discovered, recognized and understood that the appellant was suffering from "circulatory embarrassment", and they knew and understood that unless treatment known to them was administered promptly to alleviate the patient's serious condition, the danger was imminent that the part of the patient's body below the point where the blood circulatory system was blocked would develop gangrene "if uncorrected"; that nevertheless, the appellees being so advised, negligently failed to promptly do and perform the known necessary therapy for a period of 110 hours. It is alleged their failure so to do resulted in the described amputation and permanent deformity of appellant's foot, and related injury.

On the other hand, the appellees contend that Dr. Womack diagnosed the patient's condition to be "vascular reaction to penicillin injection," and that although he recognized that appellant was suffering from a "circulatory embarrassment", he did not diagnose the patient's condition as being an embolism caused by arterial injection. Moreover, it was claimed, in order for gangrene to develop there must have existed a total blockage of the blood supply to the affected area, and that in his medical opinion, at the time, the degree of "circulatory embarrassment" in the patient's foot, did not indicate that appellant was suffering from such condition, as the result of an intra-arterial injection.

The appellees' theory of defense throughout the trial was based upon the proposition that the patient was suffering from a peculiar allergy known as allergic vasculitis and hypersensitivity angiitis, a disease called necrotizing angiitis. It is also asserted that the diagnosis made and the treatment given appellant constituted an exercise of the defendants best medical judgment and was the exercise of that degree of skill and care ordinarily possessed and exercised by physicians in a similar practice in the locality of Jackson, Mississippi.

It is argued that appellant failed to adduce any proof concerning the standard of care and skill to be exercised by a physician or nurse, in administering an injection of penicillin, or standard of care for which the defendants were to be held accountable and that there was no testimony whatsoever showing a deviation from that standard. Appellees cited the case of Toy v. Rickert, 53 N. J. Super. 27, 146 A. 2d 510. This case is similar to the case at bar in that a doctor was sued in a malpractice action growing out of a hypodermic injection of penicillin into the buttock of a patient. The damage in the *Toy* case involved the sciatic nerve. The Court pointed out that ''Neither improper diagnosis nor impropriety in the treatment selected are in issue here. The sole factual issue is whether defendant inserted the hypodermic needle in an unorthodox manner or at a site which is not considered orthodox or proper.''

██ ██ In the instant case, in contrast to the *Toy* case, appellant offered evidence as to the standard of care necessary to administer injections of penicillin in the buttocks of a child three years old, and also the standard of care necessary to treat an embolism or ''circulatory embarrassment'' after the condition had been discovered. Moreover, Dr. Womack admitted in a written statement to an insurance company that the appellant's illness was due to intra-arterial injection of penicillin in oil. We are of the opinion therefore that if appellees knew, or by the exercise of reasonable care should have known, appellant was suffering with an embolism as a result of an arterial injection and they omitted or failed to exercise reasonable diligence and care to alleviate the condition of appellant, the appellee-doctors were guilty of negligence. It has been said that ''It is the universal rule that a physician is liable to his patient for a failure to exercise requisite skill and care. By that it is meant that a physician must possess that reasonable degree of learning, skill, and experience

which ordinarily is possessed by others of his profession, and that he must exercise reasonable and ordinary care and diligence in the exertion of his skill and the application of his knowledge, and exert his best judgment as to the treatment of the case intrusted to him — in short, a physician is bound to bestow such reasonable and ordinary care, skill, and diligence as physicians and surgeons in good standing in the same neighborhood, in the same general line of practice, ordinarily have and exercise in like cases.'' 41 Am. Jur. 200, Physicians and Surgeons, § 82. See also Copeland v. Robertson, 236 Miss. 95, 112 So. 2d 236.

In the case of Newport v. Hyde, 244 Miss. 870, 147 So. 2d 113, we said ''Malpractice liability may result either through lack of skill or neglect to apply it, if possessed. The two are separate, distinct bases of liability. 70 C. J. S., Physicians and Surgeons, § 40; 41 Am. Jur., Physicians and Surgeons, § 82; Gunter v. Whitener, 75 S. W. 2d 588 (Mo. App. 1934), illustrates this distinction. That case was submitted to the jury solely upon the theory of negligence in the treatment of the patient by a medical doctor. The court approved an instruction stating that the mere fact that defendant might have been competent and skillful constituted no defense to the action, if the jury found he was negligent in setting the fractured bones. The question of defendant's possession or want of skill was not an issue, and constituted no protection against a suit based upon negligence in treating the patient. See Louisell and Williams, Trial of Medical Malpractice Cases (1960), §§ 8.01-8.13.''

In the instant case the declaration does not charge that the defendant-doctors were incompetent or that they lacked the necessary skill required of doctors practicing their profession as pediatricians. The theory of the plaintiff's case appears to be that, the defendants knew, or should have known, by the exercise of reason-

able care (from the skill they possessed) that the appellant, their patient, was suffering from an embolism resulting from an oil and penicillin injection in an artery; that in fact one of the defendants did know that the patient was suffering from "a circulatory embarassment", and having prescribed the penicillin injection, and having "checked" the child's clinical record, and being advised that the child had not theretofore shown allergic reaction to penicillin one of the defendant-doctors, being skilled, knew or should have known, that the "circulatory embarrassment" was brought about by the injection of oil and penicillin into an artery, and that prompt therapy, known to him, should have been given for the immediate relief of his patient, and that the failure of the doctors to promptly pursue known remedies was a failure to give their patient the care required by law and was negligence. The declaration charges, however, that the nurse was incompetent, and also charges that she negligently injected the Flo-cillin into the gluteal artery.

It is earnestly argued by the appellees that the case of Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625, is applicable to the facts in this case, because the *Wilkins* case reestablished the rule that possibilities will not sustain a verdict. In a case cited therein (I. C. R. R. Company v. Cathey, 70 Miss. 332, 12 So. 253) it is said: "It is not enough that negligence of the employer and injury to the employe coexisted, but the injury must have been caused by the negligence." This argument is based upon the assertion that the testimony offered by the plaintiff was "clearly insufficient to establish the standard of care", and "to impose liability for malpractice."

It has been pointed out in 38 Am. Jur., Negligence, § 285, at p. 974 that "In other words, a plaintiff who grounds his action upon an allegation of negligence by the defendant must show not only that the conduct of

which he complains was negligent in character, but also that it was violative of some duty which the defendant owed to him, and, in addition to such proof of negligence and injury, must prove that such breach of duty or negligence was the proximate cause of the injury or loss complained of. The plaintiff must establish directly or by just inference some want of care on the part of the defendant to which his injury may fairly and reasonably be traced." See also 38 Am. Jur., Negligence, § 290, p. 983.

 █ The rule in cases of negligence generally, thus stated, also applies in malpractice cases, and is as follows: "In a suit for injuries caused by alleged malpractice, the burden is on the plaintiff to prove the want of reasonable and ordinary care or skill of the physician or surgeon." 41 Am. Jur., Physicians and Surgeons, § 125, p. 235.

 █ It must be remembered, however, that rules with reference to weight and sufficiency of evidence in malpractice cases are controlled by the rules of evidence generally, and it has been said that "Circumstantial evidence may suffice to prove proximate cause where it reasonably establishes a causal connection between the alleged negligence and the injury." 41 Am. Jur., Physicians and Surgeons, § 131, at p. 245. We also point out that it is not necessary that the plaintiff prove his case beyond a reasonable doubt, or to a mathematical certainty. It is only necessary that the plaintiff establish his case by a preponderance of the evidence. In actions where there is direct as well as circumstantial evidence it is not necessary that the plaintiff exclude all other possible causes, a reasonable probability is sufficient. █ It is said: "Improper treatment may be established by circumstantial evidence, but when circumstantial evidence is relied on the circumstances should raise a fair presumption of negligence. It is not

essential that the evidence be direct or positive.'' 70 C.J.S., Physicians and Surgeons, § 62, at p. 1004.

■■ We are told that ''Generally, whether a particular act constitutes negligence is a mixed question of law for the court and fact for the jury, and negligence cases in which a nonsuit may be allowed or a verdict may be directed are exceptional. On motion for nonsuit all conflicts in testimony, even those produced by a mathematical calculation to show that the plaintiff's evidence that an object was not visible from a certain point was contrary to fact must be resolved in favor of the plaintiff. In many cases, the peremptory disposition of the cases has been held to constitute reversible error. A cause should never be withdrawn from the jury unless it appears as a matter of law that a recovery cannot be had upon any view of the facts which the evidence reasonably tends to establish. Nevertheless, there are instances in which the court can say that failure to act was negligence as matter of law, and others where it can say that such failure was not negligence, and between the extremes there is a zone in which the question must be submitted to the jury. As a general rule, the issue or issues of negligence and contributory negligence are to be determined by the jury, and ordinarily should not be disposed of by the court in a peremptory manner.'' 38 Am. Jur., Negligence, § 344, pp. 1041, 1042. The Legislature of Mississippi has adopted this rule as a statutory policy. See § 1455, Miss. Code 1942, Rec.

■■ We are of the opinion the questions of lack of care and negligence on the part of defendants were for the determination by the jury under the circumstances and facts here presented, and that the trial court properly submitted the issue to the jury. ■■ We are also of the opinion that the question as to whether or not the nurse, Mrs. Sheffield, was guilty of negligence in administering the hypodermic injection into the buttock of appellant was also a question of fact for

the jury, in view of all the surrounding circumstances here involved.

## II

■■ ■ The following instruction was granted to defendants and submitted to the jury: ''The Court instructs the jury for the defendants, that a doctor's reputation is an invaluable asset gained by faithful service to the community and this reputation is not to be lightly impugned by claims of bad medical practice and all of the diagnosis and treatment afforded by the defendants to the plaintiff is to be tested by the same standards, that is to say that the propriety of the treatment offered, the timing of such treatment and the consultation with other doctors is to be tested in the light of the skill and learning professed and ordinarily exercised by others of the medical profession in good standing in the same general line of practice in this community, the mere fact that some might have rendered a different diagnosis, recommended a different treatment, timed their treatment differently or consulted other specialists at earlier or later stages is inconsequential and is insufficient upon which to render a verdict against the defendants.''

■■ ■ This instruction was improvidently granted. The reputation of the doctors was not an issue before the jury. This Court has consistently held that the question of reputation of either of the parties is not an issue in a civil action, and that it is reversible error to permit testimony as to general reputation. See Millers Mutual Fire Insurance Company of Texas, etc. v. King, 232 Miss. 260, 98 So. 2d 662. There are certain exceptions to this rule but malpractice is not one of them. See Graves v. Johnson, 179 Miss. 465, 176 So. 256. We are cognizant of the holding of this Court in Shaw v. Klein, 121 Miss. 411, 83 So. 620, that evidence was admissible to show that a doctor was a careful and skillful surgeon

where want of skill and care was charged, but proof of fact and reputation are entirely separate rules of evidence. Moreover, in *Shaw* we pointed out "Whether this evidence would have been admissible in the absence of such an allegation is not now before us for consideration." We do not believe the *Shaw* case is adverse to the holding in the instant case.

The Supreme Court of Florida had presented to it the question as to whether a similar instruction should have been given a jury in that state, and it was held in Stauf v. Holden, 94 So. 2d 361 (Fla. 1957), that it was reversible error to have so instructed the jury. The Court said: "It is obvious that the court erred when he gave the instruction and on reconsideration we must conclude that the remaining charges of the court could not have erased this charge from the minds of the jury nor have rendered it harmless."

The instruction in the instant case goes further than ordinary instructions on reputation. It requires the jury to weigh the evidence of diagnosis and treatment in the light of a doctor's reputation. This instruction, in effect, is upon the weight of the testimony in violation of the requirements of § 1530, Miss. Code 1942, Rec.

### III

 ██ The court granted an instruction requiring that the plaintiff prove the doctors' lack of skill and also want of care. This instruction is erroneous because the plaintiff did not charge "lack of skill", in fact the plaintiff's case is based upon the theory that the appellee-doctors had the required skill but did not exercise the necessary care. This Court condemned a similar instruction in Newport v. Hyde, 244 Miss. 870, 147 So. 2d 113. The instruction should not of course be granted on retrial.

## IV

It is next contended that four instructions given the jury for the defendants conflict with three instructions given on behalf of the plaintiff, applying the doctrine of res ipsa loquitur. This objection necessitates the discussion of this doctrine. The doctrine of res ipsa loquitur means the thing speaks for itself.

██ ██ Negligence is not presumed, rather it is presumed ordinary care has been used. ██ ██ The person charging negligence must show that the other party, by his act or omission, has violated some duty incumbent upon him and thereby caused the injury complained of. ██ ██ There is however a class of cases in which it is held that where the thing is shown to be under the management of the defendant, or his agent, and where an accident in the ordinary course of events does not happen when the business is properly conducted, the accident itself, if it happens, raises a presumption of negligence in the absence of any explanation.

The *English* case, where a passerby in a street was hurt by a barrel of flour falling from a warehouse window, is an illustration of this group of cases. Byrne v. Broadle, 2 Hurl. & C. 722. In such cases the facts are said to speak for themselves, res ipsa loquitur. But in all such cases, the cause of the accident must be clearly connected with the defendant as being by his act or under his control before negligence can be presumed.

The rule is thus stated in an English case: "There must be reasonable evidence of negligence; but where the thing is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the defendants, that the accident arose from want of care." Scott v. London Dock Company, 34 L. J. Ex. 220.

Since the defendant is in a situation to ascertain and explain the cause of the injury, while the plaintiff is not, it is reasonable that the burden of such explanation should rest upon the defendant. Jones on Evidence, (2d Ed.), Civil Cases, § 15, p. 17; Jones on Evidence, § 183 at p. 217, supra.

The rule of res ipsa loquitur has been stated succinctly by Prof. Jones on Evidence, Civil and Criminal, 5th Ed., Vol. 1, § 20, p. 42, as follows: "The rule that negligence will not be presumed finds another so-called qualification in that class of negligence actions, rapidly increasing in number and diversity, in which the doctrine of *res ipsa loquitur* (the transaction speaks for itself) is invoked — a doctrine which has been widely discussed by courts and text writers for many years. In a leading American case, the doctrine is announced as follows 'Where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that, if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened,' negligence of the defendant may fairly be inferred in the absence of any explanation.

"Thus it is apparent that *res ipsa loquitur* is not an exception to the rule of initial presumption against negligence, but is descriptive of a class of cases where the initial presumption is overcome by evidence which inherently carries with it implications of negligence without the necessity of proof of specific facts of conduct. In dealing with *res ipsa loquitur* we are scarcely dealing with presumptions at all, but rather with the question of how much proof is necessary to meet the burden placed on the party asserting negligence as the basis of his claim."

In the case of Waddle v. Sutherland, 156 Miss. 540, 126 So. 201, this Court pointed out that there was a diversity of opinions among the courts as to whether

the doctrine of res ipsa loquitur applied to injury from medical treatment, but we have aligned ourselves with the courts which hold the doctrine of res ipsa loquitur applicable to malpractice cases. We said "Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence; not that they compel such an inference, but that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking. 'But it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; and they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff.' "

In the case of Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So. 2d 582, where a patient's feet were injured when the patient's legs were strapped in such a manner as to cut off blood circulation from the feet, this Court applied the doctrine of res ipsa loquitur, citing Mississippi cases.

In the case of New Biloxi Hospital, Inc. v. Frazier, 245 Miss. 185, 146 So. 2d 882, this Court does not mention the doctrine of res ipsa loquitur, where a patient was permitted to bleed to death, but we cited cases involving this doctrine and said: "Accordingly, a hospital must exercise such reasonable care toward a patient as his known condition may require. It is liable for want of ordinary care, whether from the incompetency of a nurse, or, as here, failure in duty by a fully qualified nurse. * * * These principles are well established in Mississippi."

In the case of Sanders, et ux v. Smith, 200 Miss. 551, 27 So. 2d 889, the facts show that after a 10-year old girl had a tonsillectomy operation, she suddenly died.

There was no expert testimony offered. The mother was the only witness offered, and after her testimony had been concluded, the court sustained a motion for a directed verdict upon the ground that no evidence was shown as to lack of care and skill. On appeal, the appellants argue that the doctrine of res ipsa loquitur applied, but this Court said: "In the case at bar, it is to be noted that there is no proof in the record, whatsoever, to show lack of such degree of learning and skill in appellants, (sic), or that the stated degree of care was not used in this case." We said: "In J. C. Penney Company v. Evans, 172 Miss. 900, 160 So. 779, this Court laid down the rule that the doctrine of res ipsa loquitur should be cautiously applied. An analysis of the cases, supra, and they are in harmony with the weight of authority, leads to the conclusion, we think, that the test, generally, is not that the result of the operation was unusual and unexpected, or even fatal, alone and by itself, because, without an abnormal and rare end to operation, there would not exist an occasion for an action in damages from it. The real question, generally, is whether or not in the process of the operation any extraordinary incident or unusual event, outside of the routine of the action of its performance, occurred, and beyond the regular scope of its customary professional activity in such operations, which, if unexplained, would themselves reasonably speak to the average man as the negligent cause or causes of the untoward consequence. If there were such extraneous interventions, then the doctrine of res ipsa loquitur would be applicable to call upon the defendant to explain the matter, by evidence of exculpation, if he could. The jury would then decide the issue of fact in the case."

In the case now before us, all of the facts have been presented in evidence. The plaintiff made out a prima facie case of negligence. The cause of the injury is shown to have been an injection of peni-

cillin. The results and circumstances are such as would warrant a jury in finding that the penicillin injection was negligently administered intravenously. On the other hand the defendants have shown that the nurse was competent and skilled, and that the child was suffering with a peculiar allergy. Both questions are for the jury's determination. Moreover, it is claimed that after determining the child's condition to be a "circulatory embarrassment", the doctors failed to do and perform the necessary therapy. All the facts are before the jury. There is no room for presumptions. All of the inferences are swallowed up in the known facts and circumstances, making up the issue for the determination of the jury. The doctrine of res ipsa loquitur should be applied cautiuosly, and in this case we have reached the conclusion that the doctrine should not have been applied. ▪▪ ▪▪ There is no necessity to apply the doctrine in the instant case, because the plaintiff made out a prima facie case of negligence, which, in any case, required the defendants to go forward with the evidence. 38 Am. Jur., Negligence, § 289, p. 981. The doctrine does not apply where there is direct evidence as to the precise cause. 38 Am. Jur., § 296, p. 992, supra.

In the case of Yazoo & M. V. R. Company v. Skaggs, 181 Miss. 150, 179 So. 277, we had this to say with reference to the doctrine of res ipsa loquitur: "That doctrine (1) has no operation to excuse or dispense with definite proof, by the plaintiff, of material facts which are tangible and are capable of direct and specific evidence, as much within the power of plaintiff to produce as of the defendant; and (2) it is available to establish negligence on the part of the defendant only when the accident is such that, according to ordinary human experience, it could not have happened without such negligence; from which it follows that the doctrine does not apply when, upon the whole case, there has been specific proof which discloses some reasonable explana-

tion for the happening other than the negligence charged against the defendant.''

We hold therefore that the doctrine of res ipsa loquitur does not apply under the facts in this case and the instructions on this doctrine should not have been submitted to the jury. This opinion is limited to the facts here presented with reference to this doctrine. We do not by this opinion intend to convey the meaning that the jury is prevented from considering circumstances growing out of an accident, because the application of the doctrine is not permitted under the facts in this and similar cases. The rules in ordinary negligence cases are applicable.

It has been said that ''While it is true that simply because an accident has occurred, negligence is not to be presumed, still, in determining the question of negligence, the fact that an accident has occurred may be and should be taken into consideration, in connection with all other facts and circumstances of the case, for the purpose of determining whether in fact there was negligence. Negligence may be inferred from the circumstances surrounding the injury, if not from the fact of the injury itself.'' 38 Am. Jur., supra, § 290 at p. 985.

## V

■■ ■ Upon the retrial of this case, we believe certain instructions granted the defendants, and complained of by the appellant, should be reworded. In order to establish a prima facie case, it is not necessary for the plaintiff to show that the doctors were the sole cause of the injury, it is only necessary for the plaintiff to show that they *contributed* to the injury by failing to use proper care, or to show that the nurse negligently administered the penicillin injection.

The judgment of the lower court will therefore be reversed and remanded for a new trial in accordance with the foregoing opinion.

Reversed and remanded.

*Kyle, P. J., and Ethridge, Brady and Patterson, JJ.,* concur.