207 So.2d 85 (1968)
MILNER ENTERPRISES, INC.
v.
L.M. JACOBS.
No. 44748.
Supreme Court of Mississippi.
February 12, 1968.
*86 Heidelberg, Woodliff & Franks, W. Swan Yerger, Crisler, Crisler & Bowling, Erskine W. Wells, Wells, Thomas & Wells, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellant.
Daniel, Coker & Horton, Watkins, Pyle, Edwards & Ludlam, Jackson, for appellee.
RODGERS, Justice:
This is a tort action based upon a bailment contract and is a suit for the allegedly negligent fire loss of the bail property in possession of the bailee. The issue was submitted to a jury of the First Circuit Court District of Hinds County, Mississippi, resulting in a verdict in favor of the bailee, L.M. Jacobs. Eight cases were consolidated for trial by agreement, and it was agreed that the determination of the appeal in the instant case will govern seven of these cases. The eighth case has been appealed also, and is now on this Court docket in Patterson v. Jacobs, 207 So.2d 92.
*87 The plaintiffs, including appellant, brought separate actions to recover the value of their individual airplanes against L.M. Jacobs, with whom each had made arrangements to rent storage or garage space in the aircraft hangar leased from the City of Jackson, Mississippi and operated by Jacobs. The plaintiff in the instant case alleged and offered evidence to show that appellee was in the business of renting hanger space and that such an arrangement was a contract of bailment for hire.
It is alleged that it was the duty of the defendant as bailee to safely keep, store, and, upon demand, return the bail property to the plaintiff, bailor, in the same condition in which it was at the time it was received by him, but that he was unable to return the aircraft because it had been previously destroyed by fire on November 29, 1963. The plaintiff charged in a second count of his declaration that the defendant, L.M. Jacobs, was guilty of gross negligence which proximately caused the fire loss by: (a) keeping aviation gasoline and other combustible materials in the aircraft hangar; (b) failing to keep guards on the premises to prevent persons from striking matches and smoking; (c) failing to promulgate rules for use of the hangar; (d) failing to provide adequate fire control equipment including an automatic sprinkler; (e) permitting the aircraft hangar to become so crowded with aircraft as to create a dangerous condition; and (f) failing to lock the doors to the hangar. It was also charged that once a fire started it could not be brought under control because of the lack of fire-fighting equipment.
The third count to the declaration of the plaintiff charged implied negligence and invoked the doctrine of res ipsa loquitur.
The defendant, L.M. Jacobs, admitted the relationship of bailor and bailee. He admitted receiving the aircraft and admitted that he could not return it, because it was destroyed by fire. He denied in detail that he was guilty of the negligence charged in the declaration, or of any negligence whatsoever which proximately caused or contributed to the destruction of the plaintiff's aircraft. He admitted that he kept inflammable material in the aircraft hangar, but alleged that the material was kept in a safe place and that this material did not cause the fire.
Upon trial of the case, the evidence showed that the airplane belonging to the plaintiff was destroyed when the defendant's leased aircraft hangar burned on November 29, 1963. The fire was discovered at about 10:30 p.m. by a Federal Aviation Authority employee, who was located in a field control tower near the aircraft hangar. He saw fire coming through the south end of the hangar roof. He relayed this information to a firehouse attendant adjacent to the hangar. The captain of the fire station ran to the hangar door and saw flames rising in the southwest corner of the hangar near the storeroom. He ran back into the firehouse and called Central Fire Station for help. A fire truck was driven out to the door of the hangar by the firemen on duty but they were unable to open the doors to the hangar. The aircraft located in the hangar began to explode and no further effort was made to enter the hangar to stop the fire.
The testimony introduced by the plaintiff in the record shows that the hangar was crowded with aircraft and that the doors to the hangar were so hot they were unable to open them. The doors were not kept locked and there was no guard or night watchman on duty at the hangar. The mechanics put oily rags in metal containers located about the hangar, and there were large garbage containers used for papers and trash located in the hangar near the door. There were several fire extinguishers located about in the hangar and some old fire extinguishers in a "lean to" room adjacent to the hangar. The aircraft were all filled with aviation gasoline. The testimony shows that there were kerosene, gunk, lacquer thinner, and brake fluid located in the storeroom in the southwest corner of the hangar. It was admitted that there was no sprinkler system *88 in the hangar and the testimony was in conflict as to how clean the hangar was at the time of the fire.
The plaintiff introduced an ordinance of the City of Jackson which prohibited the storage of material or equipment in such a manner as to constitute a hazard and which also prohibited the storage of inflammables in the aircraft hangar.
On the other hand the testimony for defendant indicated that the aircraft hangar was clean; that the oily rags were kept in covered cans; that just prior to the fire the hangar had been washed clean with a fire hose by firemen; that only two hangars in the state were known to be locked at night; that a water sprinkler system was not ordinarily used in this state in aircraft hangars; that the fire started from an unknown origin and that all was done that could have been done to stop the fire after it was discovered. The proof also showed that certain paint cans found after the fire had been used for flower pots and that some of the inflammable material, "kerosene", kept in the storeroom was still in the oil drums after the fire. It was further shown that there was no lacquer or paint thinner located in the storage room.
The defendant's testimony also shows that there was an employee of the government in the control tower near the hangar and that firemen employed by the City of Jackson were on duty at the time of the fire in a firehouse a few feet from the aircraft hangar door.
The plaintiff has appealed from the verdict of the jury and the judgment of the court and contend that this case should be reversed because of three reversible errors alleged to have been committed by the trial court. It is said that the court erred in not permitting a member of the Mississippi State Rating Bureau to testify from a pamphlet or booklet published by the National Fire Protection Association in which the association required that sprinkler systems be installed under certain conditions in certain types of hangars and required foam water sprinkler systems in hangars similar to the one here involved.
The court was correct in refusing to permit the witness to testify from this pamphlet or book used by the Insurance Rating Bureau and published by an insurance association. The court was correct in refusing to permit the witness to put such pamphlet into evidence.
As a general rule a book or other publication printed by a private organization and not approved by public authority is not competent evidence of the facts therein shown, except as sometimes used on cross-examination to test the knowledge of an expert witness.
It has been said that the reason for the exclusion of books and pamphlets is: the sciences are in an unsettled condition; the technical language is not readily understandable by men of common experience; the books are written without the sanction of an oath; the authorities are not liable to cross-examination; and such books are but hearsay evidence of matters about which living witnesses could be called to testify.
This Court has adopted this general rule in several cases. Tucker v. Donald, 60 Miss. 460 (1882); Pevey v. Alexander Pool Co., 244 Miss. 25, 139 So.2d 847 (1962); see also 31 Am.Jur.2d Expert and Opinion Evidence § 66 (1967).
The appellant next contends that he was entitled to an instruction telling the jury that if the defendant were negligent in either the start of the fire or the control of the fire after it was started, the plaintiff was entitled to recover.[1] The thrust of appellant's argument on this point is that he *89 was entitled to recover for any negligence shown by the failure of the defendant to control the fire under the circumstances shown in the instant case. The appellant obtained other instructions with reference to negligence generally. The trouble with this instruction is that there is no testimony to substantiate it. The testimony shows that, within a few minutes after the fire was discovered, the fire department did all it could to control the fire; but that the fact that the doors were hot and the airplanes were exploding made it dangerous to enter the hangar for the purpose of controlling the fire. We are of the opinion that this instruction was properly refused by the trial judge.
The eleventh instruction given to the appellee has given us considerable concern. It is as follows:
"The Court instructs the jury for the defendant, L.M. Jacobs, that the fact that there was a fire of unexplained origin in the hangar operated by the defendant at Hawkins Field is not, of itself, any proof of negligence, and this is true even though defendant was a bailee of the planes owned by the plaintiffs, and that in the cases under consideration, to warrant a recovery by the plaintiffs, or any of them, in any amount whatsoever, it is not enough for them to show that their planes were burned in said fire while stored in the hangar of the defendant under a contract of bailment, nor is negligence on the part of the defendant to be presumed or inferred by you from the mere fact of the fire complained of in this case, but before the plaintiffs, or any of them, can recover from the defendant, in any amount whatsoever, the plaintiffs must have proved to you by a preponderance of the credible evidence in this case that this defendant failed to exercise that degree of care which a reasonably prudent person would have exercised in taking care of his own property under like or similar conditions, and must further prove that such failure, if any you find, proximately caused the fire and resulting damages to the plaintiffs, and unless the plaintiffs have so proved such matters by a preponderance of the credible evidence in this case, it is your sworn duty to return a verdict for the defendant."
It is true that this instruction was criticized in Fisher v. Daniels, 252 Miss. 662, 173 So.2d 908 (1965) and Johnson v. Foster, 202 So.2d 520 (Miss. 1967).
The appellee  while admitting that the instruction has been criticized  points out that the criticism of the instruction always has been found in cases where the doctrine of res ipsa loquitur has been applied, and he cites 38 Am.Jur. Negligence § 290 (1941):
"A party to a negligence action may be aided in establishing his claim or his defense thereto, as the case may be, by any of the many presumptions recognized by rules of evidence. Negligence, however, is a fault, and is not to be presumed, but rather must be proved. Apart from the rule of res ipsa loquitur, negligence cannot be assumed from the mere fact of an accident and an injury. The mere fact that an accident happens is not evidence of negligence. .. . A careful analysis of the better-considered decisions *90 shows that negligence will not be inferred or presumed from the mere fact of injury when that fact is as consistent with an inference that the injury was unavoidable as it is with negligence; therefore, if it be left in doubt what the cause of the accident was, or if it may as well be attributable to the act of God or unknown causes as to negligence, there is no such presumption."
It is then argued by the appellee that the instant case is not a case where the doctrine of res ipsa loquitur is applicable, because we have previously held that a loss by fire of the bail property is a defense to a suit to recover the value of bailed property lost while in the possession of the bailee. Appellee cites Yazoo & Mississippi Valley Railroad Company v. Hughes, 94 Miss. 242, 47 So. 662, 22 L.R.A.,N.S., 975 (1908) and Meridian Fair & Exposition Association v. North Birmingham Street Railway Company, 70 Miss. 808, 12 So. 555 (1893).
In the Hughes case, supra, this Court said:
"Of course, the contract of bailment in this case was for the mutual benefit of the parties, and the warehouseman is therefore held to the exercise of ordinary care. The question is interesting and somewhat novel in this jurisdiction. We think our conclusion in this matter can best be stated by a consideration of a few authorities.
"It appears that the ancient rule was that in all cases where a bailee was sought to be held no presumption of negligence arises on account of the loss of the goods, and the burden of proof is always on the plaintiff to establish that negligence was attributable to the bailee. But by the weight of modern authority this doctrine is substantially modified. It may now be said to be established that, when a bailor shows that goods are delivered to his bailee in good condition and are lost or destroyed or returned in a damaged condition, this fact creates a prima facie presumption of negligence; and it thereupon devolves upon the bailee to absolve himself from negligence. But the bailee may acquit himself of the charge of negligence by showing that the loss occurred from a cause which prima facie exonerates the bailee from negligence. `Thus, if he proves that the loss was occasioned by burglary, fire, the falling of the warehouse in which the goods were stored, the death of an animal bailed, * * * the burden is again shifted to the bailor to prove the defendant's negligence.' 3 A. & E. Ency. Law (2d Ed.) 750."
The Court then quoted from the Meridian Fair case and said:
"The court says: `When a bailee in an action for nonreturn of an article shows that it was destroyed by fire under circumstances fully disclosed, and not suggestive of any want of due care, it devolves on the bailor seeking to hold him responsible to turn the scale by some evidence inculpatory of the defendant. The law does not intend or presume negligence. It does make the reasonable requirement of the bailee who fails to return the thing bailed to show that he cannot return it, and why; and, when he discloses fully the fact showing the impossibility of a return because of the destruction of the thing, with the attendant circumstances, and nothing connected with his showing in this respect inculpates him, the plaintiff must show liability or fail in his action.'"
It seems therefore that the rule is well settled that an ordinary bailee (as distinguished from special bailees, common carriers, etc.) is not an insurer of the goods and chattels delivered into his keeping. Seward v. First Nat'l Bank, 193 Miss. 656, 8 So.2d 236 (1942); King-Sparrow Lumber Co. v. Stewart, 132 Miss. 101, 95 So. 833, 31 A.L.R. 1364 (1923); Merchants' Wharfboat Ass'n v. Wood, 64 Miss. 661, 2 So. 76 (1887).
*91 The care and diligence which a bailee must exercise in the preservation of the bail property corresponds with the degree of negligence for which he is responsible. The bailee is bound to that degree of diligence which the manner and nature of the bailment make it reasonable to expect of him; care less than this makes the bailee liable. However, unless it is shown that the bailee breached some duty owed to the bailor, the bailee is not liable. Moreover, the burden is upon the plaintiff-claimant to establish this breach of duty. Batesville Gin Co. v. Whitten, 96 Miss. 210, 50 So. 695 (1909).
In the case of Matthews v. Carpenter, 231 Miss. 677, 97 So.2d 522 (1957), this Court pointed out that "since the damage resulted from fire, of course the burden was on the plaintiffs to show negligence." In that case the plaintiff's truck was burned in a repair and paint shop where inflammable materials were kept and where a fine mist of paint was sprayed in a room adjoining the shop where a welding torch was operated. Under this statement of facts this Court said: "Of course negligence may be proved by circumstantial evidence. See 38 Am.Jur., Negligence, Section 333, p. 1032 * * *." The Court then quoted that authority and said: "This principle has been repeatedly approved by this Court."
From a review of the foregoing authorities and applying the law to the facts in the present case, it is clear that the burden of proof was upon the appellant throughout the trial to establish that the appellee was not only negligent in the operation of the hangar business, but in addition he must have shown that such negligence was a proximate contributing cause resulting in the loss of the aircraft. We are therefore of the opinion that the doctrine of res ipsa loquitur does not apply to the facts in this case.
In the case of Fisher v. Daniels, 252 Miss. 662, 173 So.2d 908 (1965), in which the foregoing instruction was expressly criticized, we based the criticism upon DeLaughter v. Womack, 250 Miss. 190, 164 So.2d 762 (1964). In that case this Court dealt with the doctrine of res ipsa loquitur. However, we expressly pointed out that "negligence is not presumed, rather it is presumed ordinary care has been used. The person charging negligence must show that the other party, by his act or omission, has violated some duty incumbent upon him and thereby caused the injury complained of." Id. at 208, 164 So.2d at 769. In discussing the res ipsa loquitur doctrine we said: "There is however a class of cases in which it is held that where the thing is shown to be under the management of the defendant, or his agent, and where an accident in the ordinary course of events does not happen when the business is properly conducted, the accident itself, if it happens, raises a presumption of negligence in the absence of any explanation." Ibid.
The complained of instruction in this case which is condemned in Fisher applies only in cases where the doctrine of res ipsa loquitur applies.
We are of the opinion and so hold that the foregoing instruction complained of by the appellant in this case was not error. On the other hand, we are of the opinion that the plaintiff, appellant here, made out a prima facie case and that the evidence introduced by the bailee in rebuttal made a question of fact for the jury to determine whether or not under the circumstances shown, L.M. Jacobs, the defendant, was guilty of negligence.
The jury found for the defendant, and we are of the opinion that the verdict of the jury and the judgment of the circuit court should be and is hereby affirmed.
Affirmed.
ETHRIDGE, C.J., and BRADY, PATTERSON, and SMITH, JJ., concur.
NOTES
[1] The Court instructs the jury that the law does not require every fact and circumstance which make up a case of negligence to be proved by direct and positive evidence or by the testimony of eye witnesses. Proof of the fact of negligence may rest entirely in circumstances; in other words, circumstantial evidence alone may authorize a finding of negligence. Hence negligence may be inferred from all the facts and attendant circumstances in the case, and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a prima facie case is made, and the court instructs you that if you believe from a preponderance of the evidence in this case that the defendant was negligent in either the start of the fire in question (or in the control of the fire after it was started) and you believe from a preponderance of the evidence that such negligence, if any, proximately caused or proximately contributed to the loss of plaintiff's plane, then the Court instructs you that you should find for the plaintiff.