209 So.2d 809 (1968)
Mrs. Donna M. HILL et al.
v.
Dr. Leo O. STEWART.
No. 44890.
Supreme Court of Mississippi.
April 29, 1968.
Rehearing Denied May 20, 1968.
*810 Bryan & Gordon, Pascagoula, Holleman, Hurlbert & Necaise, Gulfport, for appellants.
Wiesenburg, McLeod, Oswald & Lockard, Pascagoula, for appellee.
RODGERS, Justice:
This is a malpractice suit filed in Jackson County, Mississippi against Dr. Leo O. Stewart by the heirs at law of Julius W. Hill, who died at the Singing River Hospital on March 11, 1965.
The declaration charges that Julius W. Hill was ill and that he employed the appellee, Dr. Leo O. Stewart, to wait upon him as his physician; that appellee examined Mr. Hill and was advised that the patient had recently lost weight, that he had frequent urinal eliminations, that he required a great deal of water to drink, that he had a loss of vision and appetite, and that he often suffered from nausea and vomiting. It charged that the appellee erroneously diagnosed Mr. Hill's illness as multiple sclerosis and influenza; that the appellee failed to use the care and skill ordinarily used by physicians in the Pascagoula, Mississippi area; that had the appellee used the care required by law he would have discovered that his patient, Mr. Hill, was suffering from uncontrolled diabetes mellitus, which required immediate treatment and the use of insulin to prevent ketosis, acidosis, coma and death; that the symptoms shown would have been recognized and diagnosed as uncontrolled diabetes by a physician of ordinary skill in that community.
It is charged that the appellee did not return to the hospital to examine the patient for a period of twenty hours after admitting him, and that during this period the patient had grown steadily worse. Finally, blood and urinal tests were made, and it was discovered that the patient was suffering from uncontrolled diabetes. Proper treatment was begun, but it came too late; the patient died.
The defendant, Dr. Leo O. Stewart, filed his answer in which he denied each charge of negligence, denied that the patient was suffering from uncontrolled diabetes mellitus, and denied that the patient was not treated for a period of twenty hours or that he died as a result of uncontrolled diabetes *811 mellitus. He denied that he owned damages growing out of the death of Julius W. Hill to the heirs of the deceased.
The testimony shows that Mrs. Hill advised Dr. Stewart of the symptoms and history of Mr. Hill's illness, and that after the doctor left the patient about noon on March 9 he did not return to examine Mr. Hill until 8:30 a.m. on March 10, although during this time he had been advised that his patient's condition was deteriorating. Dr. Stewart stated on cross examination as an adverse witness that he had "ordered a routine lab" which included an urinalysis, but did not include a blood sugar test. When he returned, he found that no report had been made. He admitted that when diabetes is suspected, "a urinalysis and blood count should be obtained." He said that at the time he agreed that the patient was suffering from diabetes, but now was of the opinion that the patient had died from viral pneumonitis with hyaline membrane type pneumonia, and that he had an adrenal gland crisis or failure because his adrenal glands could not fight off this infection. He said the patient also had multiple sclerosis.
Dr. Kendall Gregory testified as an expert witness on behalf of the plaintiffs and described the general standards of skill and the qualifications of a general medical practitioner in the Coast area, and said that from an examination of the medical records, hospital records, and reports of other doctors admitted into evidence, he agreed with the diagnosis of Dr. Samuel J. Simmons that Mr. Hill died from severe diabetic acidosis. He had read the reports of the pathologist with reference to his discoveries by autopsy, and pointed out that an autopsy would not reveal diabetic acidosis. He said: "If a man has diabetes and it goes unchecked so that he develops severe acidosis, then he is very susceptible to viral pneumonia." He said that bronchial pneumonia is present in a large percentage of autopsy examinations, and "most always a secondary cause of death." He testified that it should be within the knowledge of a general practitioner to have an immediate test made and to have treatment instituted under the circumstances, and that a failure to do so would be a departure from the skill and care required of a general practitioner in the Coast area. He testified that the patient in the instant case would probably have had a good chance of survival. He testified on cross examination, however, that "it would be [his] opinion from reviewing this record that this pneumonitis and hyaline membrane disease with the complication of his diabetic acidosis" caused his death. He testified that viral infections can trigger diabetes and that diabetes can also trigger viral infections. He testified that the autopsy report of the pathologist, Dr. Ezell, showed that the deceased died from (1) viral pneumonia with hyaline membrane, and (2) optic neuropathy nonspecific, possible multiple sclerosis or diabetic neuropathy.
Dr. Simmons testified that the symptoms described by Mrs. Hill to Dr. Stewart indicated diabetes. He said that he diagnosed the patient's condition as being severe diabetic acidosis and that Dr. Stewart agreed with him at the time he was called into consultation. He said that they gave him immediate treatment, but the patient failed to respond, and that he could not say that had the patient been given this treatment on the day he entered the hospital he would have lived. Dr. Simmons did not believe an autopsy could reveal a pathological diagnosis post mortem of acidosis. He said the patient died of diabetic acidosis. He admitted upon cross examination that the patient's x-ray indicated "pneumonitis" and said that he gave the patient antibiotics for this condition. He also testified that from a study of the chart he would not have immediately diagnosed the patient's condition as being diabetes, but that had he been given the history (similar to the symptoms given to Dr. Stewart by Mrs. Hill) of the case, he would have strongly suspected diabetes. Other testimony was introduced by the plaintiffs to show that Mr. Hill lost weight and was always thirsty while he was working.
*812 When the plaintiffs, appellants here, concluded their testimony and rested their case, the defendant, Dr. Leo O. Stewart, moved the court for a directed verdict. The trial court sustained this motion and entered a judgment in favor of Dr. Leo O. Stewart.

I.
It is the contention of the appellant that the proof introduced by the plaintiffs in the trial court fairly proved that Dr. Stewart was negligent in his failure to diagnose Mr. Hill's illness as diabetes mellitus; that he was negligent in failing to see that proper tests were made to determine whether or not diabetes existed; and that he was negligent in failing to respond to the urgent, repeated requests for reexamination of Mr. Hill as his condition became desperate.
It has been said by this Court that there there are two theories upon which malpractice liability may be predicated. It may result through lack of skill, or the neglect of a practicing physician to apply the requisite skill if possessed. Newport v. Hyde, 244 Miss. 870, 147 So.2d 113 (1962). This is also the general rule. 70 C.J.S. Physicians and Surgeons § 40 (1951); 41 Am.Jur., Physicians and Surgeons § 82 (1942).
In DeLaughter v. Womack, 250 Miss. 190, 201-202, 164 So.2d 762, 766 (1964), the Court quoted from 41 Am.Jur., Physicians and Surgeons § 82 as follows:
"It has been said that `it is the universal rule that a physician is liable to his patient for a failure to exercise requisite skill and care. By that it is meant that a physician must possess that reasonable degree of learning, skill, and experience which ordinarily is possessed by others of his profession, and that he must exercise reasonable and ordinary care and diligence in the exertion of his skill and the application of his knowledge, and exert his best judgment as to the treatment of the case entrusted to him  in short, a physician is bound to bestow such reasonable and ordinary care, skill, and diligence as physicians and surgeons in good standing in the same neighborhood, in the same general line of practice, ordinarily have and exercise in like cases.'"
Also see 41 Am.Jur., Physicians and Surgeons §§ 79, 92 (1942).
The Court has often held that on a motion for a directed verdict or upon application for a peremptory instruction, the facts expressly shown in the evidence and all the inferences necessarily and logically to be deduced from the testimony are to be taken as true in favor of the party against whom the motion is sought. Coker v. Five-Two Taxi Service, 211 Miss. 820, 52 So.2d 356, 835 (1951); Alexander v. Zeigler, 84 Miss. 560, 36 So. 536 (1904); Dean v. Brannon, 139 Miss. 312, 104 So. 173 (1925); Thomas v. Mississippi Products Co., 208 Miss. 506, 44 So.2d 556 (1950).
We also stated in DeLaughter v. Womack, supra, that: "A cause should never be withdrawn from the jury unless it appears as a matter of law that a recovery cannot be had upon any view of the facts which the evidence reasonably tends to establish." 250 Miss. at 205, 164 So.2d at 768.
Without detailing the medical history and symptoms given to the appellee, Dr. Stewart, by Mrs. Hill, or the testimony of Dr. Simmons and Dr. Gregory, we are of the opinion that the testimony introduced by the appellants in the trial court was sufficient to present a jury issue as to whether or not the appellee, Dr. Leo O. Stewart, was negligent in failing to use ordinary care to require the proper tests at the hospital, and was negligent in failing to diagnose Mr. Hill's illness as diabetes mellitus and in failing to use ordinary care to treat Mr. Hill for the disease which caused or contributed to the cause of his death. Therefore, this case must be reversed for a new trial.

*813 II.
The appellant also assigned as error the order of the trial court permitting the appellee, Dr. Leo O. Stewart, to take the depositions of six physicians who had treated the deceased. The trial court entered an order requiring these medical doctors and physicians to give their testimony by way of deposition as to their diagnosis and treatment of Mr. Julius W. Hill prior to his terminal illness. The appellants objected to this testimony upon the ground that this evidence was a violation of the doctor-patient privilege statute of this state, section 1697, Mississippi Code 1942 Annotated (1956).
The appellee contends, in reply, that this Court should not pass upon this question, because the trial judge reserved his ruling as to whether or not the depositions would be admitted into evidence. We are of the opinion, however, that a party is entitled to a hearing prior to the trial upon the question of the admissibility of his adversaries' depositions.
The pertinent part of section 1709, Mississippi Code 1942 Annotated (1956) is as follows:
"The court, on motion of either party, shall determine the objections so made and filed before entering upon the trial, and if the objections or a part thereof be sustained, may, in proper cases, allow time to retake the deposition."
We are of the opinion that this question is properly before us on appeal, and that we should determine this issue at this time. A study of the authorities has convinced us that the objection of the appellants to the depositions of the physicians who treated the deceased should not have been overruled, but should have been sustained. The privileged communications statute, section 1697, Mississippi Code 1942 Annotated (1956) is in the following language:
"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient or in case of the death of the patient, by his personal representative or legal heirs in case there be no personal representative."
The appellee, Dr. Leo O. Stewart, contends, however, that the appellants waived the statutory privilege by introducing the testimony of one of the attending physicians of the deceased who testified as to his physical condition during his terminal illness.
It may be pointed out that there is considerable authority to sustain the contention of the appellee as to waiver, but this Court and several other state courts have held that the privilege is not waived as to the testimony of other physicians in attendance or consultation when one of them is called to testify. Davis v. Elzey, 126 Miss. 789, 88 So. 630, suggestion of error sustained on other grounds, 126 Miss. 811, 89 So. 666 (1921); 58 Am.Jur., Witnesses §§ 449, 457 (1948).
It may be said safely that the rule in Mississippi is that where a patient has been treated or examined by different physicians at different times for the same ailment, and the patient permits one of his physicians to testify about his physical condition, he does not waive the right to assert his statutory privilege of confidential communication as to the other attending physicians. United States Fid. & Guar. Co. v. Hood, 124 Miss. 548, 87 So. 115 (1921); Davis v. Elzey, supra; Hamel v. Southern Ry. Co. in Mississippi, 113 Miss. 344, 74 So. 276 (1917); see also 5 A.L.R.2d 1244 (1966).
*814 It is said in 58 Am.Jur., Witnesses § 458 (1948):
"According to the majority rule one who has been treated or examined by different physicians at different times, even though for the same ailment, does not, by waiving his privilege as to confidential communications made to one such physician, waive his privilege as to the communications made to the other physician, even though both may have attended him for the same ailment. Under this rule a patient does not waive the privilege as to facts coming to the knowledge of his physician merely because he introduces another physician who testifies for the patient about the same facts. This rule has been applied in actions for malpractice with the result that waiver of the provisions of the statute as to the physician against whom the suit is brought will not render competent the testimony of other physicians treating the patient thereafter, not in consultation with the defendant in the malpractice suit to testify over the plaintiff's objections."
However, one should note two recent cases, both of which are written by Justice Inzer. The first is Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965). There this Court held that it was error for a doctor to base his testimony on reports of other doctors not in evidence. The opinion indicated that these reports should have been introduced in the trial. We do not believe the teaching found in the second case, City of Laurel v. Upton, 253 Miss. 380, 175 So.2d 621 (1965), is contrary to the foregoing rule.
We hold, therefore, that the depositions of physicians who examined and diagnosed the illness of Mr. Hill and treated him for his illness according to their learning cannot now be taken or introduced into evidence, without the intentional and express waiver by the heirs of the deceased.
The judgment of the trial court is reversed, and the case is remanded to the Circuit Court of Jackson County, Mississippi, for a trial in accordance with the foregoing opinion.
Reversed and remanded.
ETHRIDGE, C.J., and JONES, BRADY and INZER, JJ., concur.